## LATROBE ELECTRIC STEEL CO. v. VASCOLOY-RAMET CORPORATION.
### Civil Action No. 363.

District Court, D. Delaware.
July 13, 1944.

C. S. Layton and R. H. Richards, Jr. (of Richards, Layton & Finger), both of Wilmington, Del., and Walter J. Blenko and John C. Bane, Jr. (of Reed, Smith, Shaw & McClay), both of Pittsburgh, Pa., for plaintiff.

Daniel O. Hastings and John VanBrunt (of Hastings, Stockly & Layton), both of Wilmington, Del., and Don M. Peebles and Jesse J. Holland, both of New York City, for defendant.

LEAHY, District Judge.

The reasons for not determining the original motion to dismiss are found in 55 F.Supp. 347. Since the filing of the former opinion plaintiff has amended its complaint, naming one party—the Vascoloy-Ramet Corporation—as sole defendant. Defendant Vascoloy now asks for dismissal of the amended complaint or, in the alternative, for summary judgment upon two grounds: one, that no actual controversy exists between the parties and two, that the Fansteel Metallurgical Corporation, a former defendant which can not be served here, is an indispensable party. The two motions are here on the pleadings and affidavits of the parties. Plaintiff has likewise filed a cross-motion for summary judgment.

In considering the earlier complaint the question of whether Fansteel was an indispensable party was not definitely determined. But, that question will be reconsidered here. Certain facts which were not present when the former matter was disposed of shed light on the two motions under consideration.

The plaintiff—Latrobe Electric Steel Co.—is engaged in the manufacturing of tool steels. Late in 1942 Latrobe decided to engage in the manufacture of a type of nonferrous alloy of tungsten, chromium and cobalt. This alloy, generally known as "Stellite", had been described in long-expired patents and it had been manufactured and marketed with success by various competitors of plaintiff from a time before plaintiff formulated its new program. During the first seven months of 1943 Latrobe devoted much time to a program of research and development intended to establish it as a manufacturer of this new alloy. Among the employees whose work related wholly to the cast alloy program was one man, E. A. DeBats, who had formerly been employed by defendant, and two others, named Floyd C. Kemmis and Otto Nohr, who had once been employed by former defendant Fansteel. DeBats had applied for employment with Latrobe upon his own initiative and had been employed on or about April 1, 1943. The other two men had been employed similarly and at about the same time.

It now appears that late in July and again late in August, 1943, Frazer, who was an officer of defendant, telephoned Saxman, president of plaintiff. In both conversations he complained that Latrobe had been attempting to "raid" the staffs of defendant and Fansteel by offering exorbitant salaries to their employees in attempts to entice them into plaintiff's employ. About September 1, 1943, Saxman received a letter addressed to him by Swiren (Max), attorney for both defendant and Fansteel. The relevant text of this letter is set out in the margin.[1] Swiren's letter was answered by counsel for plaintiff. Swiren acknowledged receipt of this letter and answered in part as follows: "The

[1] "Our clients, Fansteel Metallurgical Corporation and Vascoloy-Ramet Corporation, have referred to us for immediate action a very serious matter involving reprehensible and actionable conduct on the part of your company and its employees.

"Our clients have recently learned that your firm has been conducting a systematic raid upon employees who, in the course of their employment by our clients, have acquired secret technical trade secrets and information in respect of the manufacture of cast alloy tools. A protest to your officers by our clients resulted in assurance that any such activities were wholly unauthorized and that steps to termi-

conduct of your clients to which we took exception was so direct and flagrant that *we are satisfied your opinion was predicated upon a misinformation of the facts.* We can not let the matter drop on that basis." (Emphasis supplied.) A conference was then arranged between counsel for plaintiff and Swiren. After such conference plaintiff's counsel undertook to make a personal and thorough investigation into the manner in which plaintiff made cast alloy to ascertain whether it was utilizing any of the trade secrets of defendant. After a complete examination plaintiff's counsel determined that it was guilty of no impropriety and· reported that fact to Swiren with the request that he make his charges more specific.

As the next step, plaintiff commenced two actions for declaratory judgment, one in this district and one in the Southern District of New York. Before the New York matter came on for hearing counsel for the two parties met once more with the view of terminating all litigation. Thereafter a draft of a compromise agreement was composed. It opened with representations to be made by plaintiff Latrobe that the process used by it was not derived from defendant. In return for these assurances, defendant was to release Latrobe generally from all past complaints and not to bring any new action except in the federal courts for the Western District of Pennsylvania or in the Southern District of New York or in the District of Delaware. The insistence of plaintiff for the insertion of the last provision in the proposed compromise agreement resulted in all negotiations abruptly ending. There was no further attempt by anyone to compromise the dispute.

Later, in a letter by Aitchison, president of defendant, *dated* April 15, 1944, addressed to Saxman, president of plaintiff,

there is the following language: "We are prepared to accept your representations as set out above, particularly in view of their confirmation by your attorneys (in whom our counsel have full confidence) and having in mind the assurance by your attorneys that their expressions are based upon personal observation and inquiry. Accordingly, *relying entirely upon the foregoing representations made by you and the confirmatory statements by Messrs. Bane and Blenko as to their own observation and inquiry,* we hereby withdraw the charges asserted by our counsel, Messrs. Levinson Becker Peebles & Swiren, in their letter to you dated August 31, 1943." (Emphasis supplied.) There is a factual dispute as to whether the letter was sent on April 15, 1944; but, in any event, it was not received by plaintiff in Pittsburgh until April 18, 1944, which postdated the filing of the present amended complaint.

Defendant contends that on the basis of this letter there is no longer any controversy between the parties and the remedy of declaratory judgment. is inappropriate. Plaintiff, however, takes the position that since this letter would not support a plea in bar to a suit in the future for plaintiff's past actions, there still exists a controversy between the parties. Two questions will be discussed: (1) Is Fansteel, as a former defendant, an indispensable party; and (2) is there a present controversy.

■ 1. Fansteel is not an indispensable party. Defendant here urges that Fansteel is an indispensable party within the meaning of Rule 19(a), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c and under the authorities it must be joined with the present defendant. Defendant relies heavily on a quotation from State of Washington v. United States, 9 Cir., 87 F.2d 421, 427, where it was said: "After first determining that such party

---

nate such practices would at once be inaugurated. That undertaking by your company has not been met. The raid has continued. More than that, our clients have now been advised that your company is using, in the development and manufacture of cast alloy tools, trade secrets and secret process information acquired by employees of Fansteel Metallurgical Corporation and Vascoloy-Ramet Corporation during the course of their employment.

"Your raiding of employees is a serious matter in that it constitutes interference with the proper operations of a plant devoted entirely to essential war work. Your

use of trade secrets and information which are the property of our clients, developed after many years of experimentation and development work and at considerable expense, represents a monetary injury which cannot be permitted to go unremedied.

"On behalf of our clients, you are directed to cease the practices complained of in this letter. We must have proper assurances and arrangements to guarantee such cessation. Unless these are forthcoming by September 4th, we shall go forward with legal proceedings and·other appropriate action."

is interested in the controversy, the court must make a determination of the following questions applied to the particular case: (1) Is the interest of the absent party distinct and severable? (2) In the absence of such party, can the court render justice between the parties before it? (3) Will the decree made, in the absence of such party, have no injurious effect on the interest of such absent party? (4) Will the final determination in the absence of such party, be consistent with equity and good conscience?

"If, after the court determines that an absent party is interested in the controversy, it finds that all of the four questions outlined above are answered in the affirmative with respect to the absent party's interest, then such absent party is a necessary party. However, if any one of the four questions is answered in the negative, then the absent party is indispensable."[2]

The quotation is apt; but it is also authority against defendant's contention. Applying the formula of that case to the facts here, obviously there can be no negative answer to any of the four questions posed. Since plaintiff does not request the court to find that it is not utilizing any of the trade secrets of Fansteel or any of the secrets of defendant and Fansteel jointly, the interest of Fansteel is distinct and severable and any decree which might be made against the defendant in court can have no prejudicial effect upon Fansteel. This distinguishes the instant case from United States v. Washington Institute of Technology, 3 Cir., 138 F.2d 25.

I accordingly hold that Fansteel is not an indispensable party.

■■■ 2. A controversy does exist between the parties. Defendant argues that as a result of the letter *dated* April 15, 1944, to plaintiff, there is no longer a case "or controversy" in the constitutional sense and, therefore, jurisdiction must be rejected. Ætna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000; Cover v. Schwartz, 2 Cir., 133 F.2d 541. True, courts can not give relief upon a hypothetical statement of facts, but only upon a controversy which is real and substantial, "admitting of specific relief through a decree of conclusive character." But such a controversy exists here. The threats of defendant and its attorney were specifically stated to have been based on facts. In truth, the attorney for defendant, in response to a letter stating that plaintiff did not think it was guilty of any reprehensible conduct, replied that such an understanding must be based upon misinformation of the facts.[3]

It must be assumed that these statements of defendant and its attorney were made in good faith. Upon this assumption, the later letter of defendant dated April 15, 1944, can have no efficacy. Defendant withdrew its first charges, but only in sole reliance upon representations made by plaintiff and its attorney. Defendant's original threats are unequivocable and, according to its attorney, based upon facts which are claimed to admit of only one conclusion. The April 15, 1944, letter is not a repudiation of the charges found in Swiren's letter but merely a withdrawal of them. This connotes appeasement, not surrender, with, in fact, a faint implication of a later war. There is nothing to prevent defendant from renewing its threats for past occurrences at any time; and, in fact that is a natural assumption for defendant originally stated unqualifiedly that the violations were flagrant, and there has been no retraction of that statement of alleged fact.

The conclusion is that the withdrawal of the charges has no legal efficacy. The letter containing the withdrawal of the charges completely fails to furnish plaintiff protection. I shall deny defendant's motion to dismiss or in the alternative for summary judgment and permit the matter to go to trial. In reaching this result plaintiff's cross-motion for summary judgment is likewise denied. Summary judgment is not properly rendered for either party where apparently there are genuine issues as to material facts. Geller v. Transamerica Corporation, D.C.Del., 53 F. Supp. 625. The present controversy requires that all cards be laid on the table. At the trial if defendant is of opinion that there is no actual controversy by virtue of what it insists is a withdrawal of its charges, it may permit plaintiff to take a decree by default. Such a decree will furnish plaintiff with protection from further

[2] A similar rule was early announced by the Supreme Court in Shields v. Barrow, 1854, 58 U.S. 130, 15 L.Ed. 158.

[3] Attorney Swiren made this statement: "The conduct of your clients to which we took exception was so direct and flagrant that *we are satisfied your opinion was predicated upon misinformation of the facts.*" (Emphasis supplied.)

harassment in the future. These views simply carry into effect the teachings of this circuit that the declaratory judgment procedure is a means to provide prompt settlement of controversies and that the statute should be construed broadly and liberally to that end. Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70.