GIRDLER CORPORATION v. E. I. DU PONT DE NEMOURS & CO.
Civil Action No. 414.

District Court, D. Delaware.
Sept. 5, 1944.

872

Charles H. Walker (of Fish, Richardson & Neave) and Clair W. Fairbank (of Dean, Fairbank & Hirsch), both of New York City, Virgil E. Woodcock, of Philadelphia, Pa., and James R. Morford (of Marvel & Morford), of Wilmington, Del., for plaintiff.

Chester H. Biesterfeld, Albert T. St. Clair, and Alexander L. Nichols (of Morris, Steel & Nichols), all of Wilmington, Del., for defendant.

LEAHY, District Judge.

Action for a declaratory judgment under 28 U.S.C.A. § 400 of invalidity of defendant's Pitman Reissue Patent No. 22,301. The patent relates to the use of high-frequency electric heating apparatus in the manufacture of adhesive bonded products. Defendant moves to dismiss the complaint for the reason that there is no actual controversy between the parties.[1] If controversy exists, it must be either between defendant and plaintiff or defendant and plaintiff's customers.

1. Controversy between defendant and plaintiff. On July 7, 1943, defendant duPont, requesting plaintiff Girdler to take a license under the reissue patent, wrote: "Obviously, in view of your Company's activities in offering for sale electrostatic heating equipment of the type which would be an infringement of the reissue patent, you will wish to get this matter settled just as promptly as we do." In that letter duPont also stated that: "If the Girdler Corporation is not prepared to take a license, we will construe this letter as a formal notice of infringement of the reissue patent." Several months later, duPont sent a further communication which, in part, stated:

"We assume you and any other manufacturer of induction heating equipment which must necessarily employ the process claimed in Reissue 22,301 will wish to avoid contributory infringement by limiting your sales of such equipment to our licensees.

"We would appreciate your giving us a list of the names and addresses of the parties to whom you have sold induction heating equipment, whose operation would involve an infringement of this patent, in order that we may offer to license them." and "We would appreciate any comments

---

[1] Throughout the argument the parties utilized affidavits, answers to interrogatories and numerous documentary exhibits. A post-argument conference resulted in a stipulation that the motion to dismiss should be considered as a "speaking motion". See, Preliminary Draft of proposed amendment to Rule 12(b), Alternatives 2 and 3, that where matters outside the pleadings are presented, the motion to dismiss may be treated as a motion for summary judgment and disposed of as provided in Rule 56.

you may care to make either on our proposed form of license or our proposed licensing policy, including a statement as to whether or not we may have your assurance that the Girdler Corporation will not be a contributory infringer of Reissue No. 22,301 by offering for sale or selling to non-licensees induction heating equipment whose necessary operation would involve practicing the process of Reissue 22,301."

Plaintiff, as manufacturer of apparatus to be used in practicing the process covered by the claims of the reissue patent, was manifestly charged with contributory and not direct infringement. It would at first appear defendant's communications show a sufficient controversy exists between du-Pont and Girdler to support declaratory relief jurisdiction, for duPont, at least, has taken a definite position on the claims of its reissue patent insofar as Girdler's manufacture is involved. However, in the light of events occurring after the institution of suit in the case at bar, defendant argues what may have been appropriate jurisdiction in the first instance now no longer exists. Subsequent to suit defendant withdrew its charges of contributory infringement against plaintiff by stating: "* * * defendant withdraws its allegation of contributory infringement against plaintiff, without prejudice to its right to proceed against any direct infringers if and when such parties are practicing the teaching of Pitman Reissue No. 22,301, other than in the manufacture of products directly or indirectly for the Government of the United States during the period of the present war and for three months thereafter."[2] In addition, defendant offered to enter into a stipulation which plaintiff might utilize in the future as a plea in bar in the event duPont brought any subsequent suit against Girdler under the reissue patent for past acts of contributory infringement.

Defendant's main reliance is on Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, which was decided after defendant sent its notice of infringement to plaintiff; and argues that if defendant should sue plaintiff as a contributory infringer, this court under the Mercoid case would be compelled to hold that such an action was an attempt to expand the scope of the claims of the reissue patent to cover an unpatented device.[3] Defendant asserts that in view of the Mercoid case the doctrine of contributory infringement has been eliminated from our patent law and that this decision changed the circumstances from those that existed when duPont wrote its infringement notice in its letter of September 8, 1943, to plaintiff.[4] From this, defendant concludes that its inability to sue plaintiff as a contributory infringer, plus its former offer withdrawing all charges, plus its proffer of a writing which would form the basis of a plea in bar in connection with future litigation between the parties, proves there can be no controversy between defendant and plaintiff under the Act. But, I am not convinced that the Mercoid decision abolishes all contributory infringement liability. While the five opinions in that case express the particular views of the Justices on the broad question of contributory infringement, the precise holding of Mercoid is that contributory infringement liability may not be asserted by the patentee where he, himself, comes into court with unclean hands and where he has attempted to misuse his patent grant. The uncontradicted facts before me fail to disclose that duPont is guilty of any such misconduct in the utilization of its reissue patent; and I am not prepared to hold, at this time, that it can never maintain an action for contributory infringement against plaintiff, especially where plaintiff is apparently manufacturing and

---

[2] DuPont offers to give to any of Girdler's customers a royalty-free license for the duration and for a period of three months thereafter if such licensees are engaged in war work for the government.

[3] The point made is that no distinction lies between the furnishing of unpatented parts integral to structures embodying claimed patent combinations (the Mercoid case), and an attempt to control the sale of an unpatented device through patented process claims. In either case, defendant would say, the attempt is to expand the scope of the patent.

[4] In Landis Machine Co. v. Chaso Tool Co., 6 Cir., 141 F.2d 800, 801, it was said: "A careful study of the opinion [Mercoid], together with its interpretation by the dissenting Justices, and a consideration of the doubt implicit in the observation 'what residuum may be left we need not stop to consider' leads to the conclusion that nothing has been left of the doctrine as formerly it had been applied to the furnishing of unpatented parts integral to structures embodying patented combinations. Whether this bodes good or ill for the continuation of industrial progress under the aegis of the patent laws, it is not for us to say."

selling a device which it knows can only be used by the purchasers in connection with the process covered by defendant's patent. Further clarification of the Mercoid case will not result, I believe, in a definitive holding that he who was once known as a contributory infringer now enjoys complete immunity from suit under all circumstances.

2. Controversy between defendant and plaintiff's customers. If my reading of the Mercoid case is inaccurate and plaintiff here will never be subject to suit as a contributory infringer by defendant, this newly created right of freedom from suit is a right in vacuo if defendant is free to make charges of direct infringement against both persons who have purchased equipment from plaintiff and against plaintiff's prospective customers, with resultant loss to plaintiff's business. In Alfred Hofmann, Inc., v. Knitting Machines Corp. et al., 3 Cir., 123 F.2d 458, 461, it was said: "We are of the opinion that the allegation and proof by a vendor that it is engaged in a course of conduct, the sale of machinery, which has brought and must bring purchasers from it into conflict with the owner of the patent, is sufficient to support a suit for a declaratory judgment by the vendor."

Now, in the instant case, in addition to communications sent by defendant to plaintiff, duPont also sent various letters to persons who had purchased equipment from plaintiff. One such letter is typical. On February 25, 1944, in writing to Girdler's vendee, Formica Insulation Company, duPont said:

"We note that you are using a 'Thermex' electrostatic machine in the lamination of 'Pregwood' boards.

"We are owners of Pitman Reissue Patent No. 22,301, a copy of which is enclosed. This is being sent to you because we believe you will find from a study of our patent that it covers the process which you are using in the utilization of induction heating to laminate organic materials. We feel you will not want to be in the position of infringing this patent.

"We should also like you to know that we are prepared to grant licenses under our patent.

"After your study of the patent, will you please acknowledge this letter and advise us whether you want to receive a copy of our tentative license form?"

A similar letter was sent to another of Girdler's vendees, the M and M Wood Working Company of Portland, Oregon. As all of Girdler's vendees are presently engaged in the manufacture of war goods for the government, under 35 U.S.C.A. § 68, they are temporarily secure from infringement actions by defendant as owner of the reissue patent. And the M and M Wood Working Company has considered the purchase of additional equipment from Girdler; but in view of duPont's claims against general commercial use of such equipment after the war without payment of royalty to duPont, M and M is fearful of making such additional purchases because it is impossible to predict when hostilities will cease. In this connection, M and M wrote to Girdler on May 18, 1944, and said:

"While we understand that we could work on straight Government priority plywood orders on new high-frequency equipment without paying royalties to DuPont for the duration of the war no one can predict the time when war hostilities will cease, and certainly we could not entertain the idea of purchasing additional equipment facing royalty payments after the war as presently set up by the DuPont Company."

*     *     *     *     *     *

"While we would very much like to avail ourselves of your kind offer made on additional high-frequency equipment, and despite the fact we could put the equipment to good use, for the war effort, at our Longview plant, we have no alternative, in view of the facts outlined in the above paragraphs, than to pass up any consideration covering use of additional high-frequency equipment."

These communications support the allegations in the complaint that defendant has taken a definite position that "the use" by plaintiff's customers "of such high-frequency apparatus in the lamination of wood would constitute infringement of its patent"; and that "this position will constitute an impediment to plaintiff's sale of such apparatus." (Par. 6.) Defendant challenges this position on the ground that it has never charged anyone with direct infringement of its patent; therefore, it contends, plaintiff has no legal interest in either the question of infringement or the validity of the patent in suit. But, what about the Formica letter? That letter states three operative facts: (1) Defendant's ownership of the Pitman Reissue Patent; (2) defendant's knowledge that Formica is using one of plaintiff's machines which practices the process covered by the

patent; and (3) that the practice of this process without a duPont license would constitute an infringement of the reissue patent. The real content of the Formica letter is made clear by a reading of defendant's letter to plaintiff under date of September 8, 1943, in which duPont wrote that the use of Girdler's equipment "must necessarily employ the process claimed in reissue 22,301."

■ Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702, decides that it is not a necessary prerequisite for a declaratory judgment action that there be a specific threat of suit or the actual institution of suit. That case holds no direct charge of infringement need be made where the patent owner asserts to the trade (among which could be a declaratory judgment plaintiff's customer) that the process under inquiry is covered by the patent claims and that any unauthorized use will constitute infringement.

■ The mere assertion of adverse rights evidences the existence of a justiciable controversy between the owner of the patent and the declaratory judgment plaintiff. The test as to controversy is that there must be a concrete case touching legal rights of the parties who have an adverse legal interest which is susceptible of definitive termination. The most recent announcement which carries the rule forward is found in Crowell v. Baker Oil Tools, Inc., 9 Cir., 143 F.2d 1003. Plaintiff there had made infringing devices and took the position he intended to make more. The district court denied jurisdiction because plaintiff had no plant or machinery for the manufacture of additional devices and was unable to show any written or oral contracts for the supply of materials for the manufacture of the devices which he stated he intended to make and sell. In Crowell v. Baker Oil Tools, Inc., the court said: "Appellant's making of the several infringing devices and his intent to cause the production of more, evidenced by his understanding with a friendly company to supply him with the necessary material, are sufficient to invoke the right to sue the patent owner under the Declaratory Judgment Act. The purposes of that act are best served if a four-time infringer or a one-time infringer intending to challenge the validity of the patent, does not commit the economic waste of building or engaging another to build a plant to manufacture the alleged patented device before having determined the validity of the patent." In the case at bar, plaintiff has a stronger position than a mere prospective manufacturer. It has sold a considerable quantity of machines which are planned to utilize defendant's process. In view of plaintiff's future prospects that it will obtain still more customers, defendant's asserted position with respect to the coverage of its claims in suit becomes the key to the problem. There are cases which hold that before declaratory judgment jurisdiction attaches defendant must have instituted a previous suit against a similarly situated declaratory judgment plaintiff or a customer,[5] or a definite threat of suit against either,[6] or the giving of a general notice to the trade.[7] But this does not mean that these, and only these, factors or any one of them must be present. Where the patent owner makes his position clear with respect to a manufacturer's customer, the result is that the declaratory judgment plaintiff, as manufacturer, finds his competition threatened by such patent owner's assertions; and the other result is the customer's fear of suit against itself. When this happens, a real controversy exists over the scope of the patent as between the declaratory judgment plaintiff v. the owner of the patent.

---

[5] Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68; Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458; Creamery Package Mfg. Co. v. Cherry-Burrell Corp., 3 Cir., 115 F.2d 980; National Hairdressers', etc., v. Philad Co., D.C.Del., 3 F.R.D. 199; Western Electric Co., Inc., v. Hammond, 1 Cir., 135 F.2d 283; E. W. Bliss Co. v. Cold Metal Process Co., 6 Cir., 102 F.2d 105; E. Edelmann & Co., v. Triple-A Specialty Co., 7 Cir., 88 F.2d 852.

[6] Dewey & Almy Chemical Co. v. American Anode, Inc., supra; Alfred Hofmann, Inc., v. Knitting Machines Corp., supra;

Creamery Package Mfg. Co. v. Cherry-Burrell Corp., supra; National Hairdressers, etc., v. Philad Co., supra; B. F. Goodrich Co. v. American Lakes Paper Co., D.C.Del., 23 F.Supp. 682; Duro Test Corporation v. Welsbach Street Lighting Co., D.C.Del., 21 F.Supp. 260; Latrobe Electric Steel Co. v. Vancoloy-Ramet Corporation, D.C.Del., 55 F.Supp. 347; and D.C.Del., 56 F.Supp. 37.

[7] Treemond Co. v. Schering Corporation, 3 Cir., 122 F.2d 702; E. W. Bliss Co. v. Cold Metal Process Co., supra; E. Edelmann & Co. v. Triple-A Specialty Co., supra.

To illustrate: The May .18, 1944, letter of M and M Wood Working Company discloses the state of mind of, at least, one of the purchasers of plaintiff's equipment with respect to further installations. A subsequent letter from M and M under date of July 27, 1944, discloses its intention to install new equipment; but it will not invest in additional equipment if, after the termination of hostilities, it may engage in nongovernmental and general commercial business only on the basis that such equipment is covered by defendant's patents subjecting it to royalty-paying. Its readiness to make additional purchases from plaintiff is found in the following statement: "Our confidence in the future of high frequency coupled with the Girdler offer has impelled us to reach this decision: That if a royalty free license is granted by Dupont on this installation, we will immediately undertake negotiations with the Girdler Corporation toward the acquisition of such additional unit * * * we have concluded that if we do not secure a royalty free license from Dupont on or before September 1st of this year, we will then abandon our present intention of installing high frequency * * *." M and M knows defendant's asserted position of coverage of the Pitman Reissue Patent. Plaintiff should have the right to challenge the reissue patent; if not, it stands the chance of losing its former and prospective customers, in view of the position taken by defendant of the coverage of its claims. There is controversy here; and it is ripe for litigation.

Defendant's speaking motion to dismiss the complaint for lack of jurisdiction is denied.