CHICAGO PNEUMATIC TOOL CO., et al.
v. HUGHES TOOL CO.

No. 463.

District Court, D. Delaware.
Aug. 7, 1945.

William F. Hall, of Washington, D. C., and Raymond G. Mullee, of New York City, and William S. Potter (of Southerland, Berl & Potter), of Wilmington, Del., for plaintiffs.

George I. Haight (of Haight, Goldstein & Hobbs), of Chicago, Ill., Robert F. Campbell and Lester B. Clark (of Andrews, Kelley, Kurth & Campbell), both of Houston, Tex., and Arthur G. Connolly, of Wilmington, Del., for defendant.

LEAHY, District Judge.

This is an action containing three counts and based on the Anti-Trust Laws,[1] the Patent Laws[2] and the Declaratory Judgment Act.[3] Defendant filed a consolidated motion to strike portions of the complaint, to dismiss the three counts, or for summary judgment as to counts 1 and 2.[4]

■ Count 1. Plaintiffs allege the parties manufacture rotary bits for drilling oil wells. Defendant in 1933 sued plaintiff, Chicago Pneumatic Tool Company of Massachusetts,[5] in the United States District Court for the Western District of Oklahoma for selling bits manufactured by Chicago Pneumatic Tool Company of New Jersey,[6] charging infringement of Scott and Wellensiek patent No. 1,647,753 owned by defendant. Defendant procured an injunction and a Master was appointed to take an accounting. The Tenth Circuit affirmed. 97 F.2d 945, certiorari denied 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 415. Defendant Massachusetts alleges that the claims there in suit were for a drill-bit assembly, although defendant's theory of the case was that claims 2, 3, 4 and 5 were on cutters per se. It is urged that under the recent decisions of Mercoid Corporation v. Mid-Continent Investment Co., 320 U.S. 661, 64 S.Ct. 268, 88 L.Ed. 376, and Mercoid Corporation v. Minneapolis-Honeywell Regulator Co., 320 U.S. 680, 64 S.Ct. 278, 88 L.Ed. 396, a claim for a combination is not infringed by a sale of one element of the combination; and the injunction and accounting ordered in Oklahoma, on the basis of that contributory infringement suit, is an approval of a misuse of the patent and is therefore in violation of the Anti-Trust Laws. The relief sought under count 1 is for injunction against further proceedings in the Oklahoma case; that defendant be enjoined from further violations of the Anti-Trust Laws and be required to pay treble damages; and that defendant be en-

---

[1] 15 U.S.C.A. §§ 2, 15 and 26.

[2] 28 U.S.C.A. § 41(7).

[3] 28 U.S.C.A. § 400.

[4] The motions are based on Rule 12 (f), 28 U.S.C.A. following section 723c, for failure to state a claim on which relief can be granted; on Rule 12(b) for lack of jurisdiction over the subject matter; on Rule 8(e) for absence of concise pleading as to all counts; and on Rule 56 for summary judgment as to Counts 1 and 2.

[5] Called herein "Massachusetts".

[6] Called herein "New Jersey". It is tacitly conceded that there exists an identity between both companies.

joined from bringing suit anywhere on patent No. 1,647,753.

If the count's purpose is to seek a retrial of the issues adjudicated by the Tenth Circuit, the count will be rejected. The Oklahoma court first acquired jurisdiction. It decided the issues between the parties. Awaiting a final report from its Master, it still retains jurisdiction of the subject matter of the controversy between the parties.[7]

The major point in this count is the effect of the Mercoid decisions. If affirmance by the Tenth Circuit Court of Appeals of the decree in defendant's favor is to be considered a violation of the Anti-Trust Laws, then plaintiffs are required to journey to that forum in order that that Court may correct its own error. As long as its decree remains in force it retains jurisdiction. It is unknown in our federal system for the District Court of Delaware, say, to emasculate a decree of the Tenth Circuit because what the latter Court thought the law to be in 1938, on the doctrine of contributory infringement, has now proved to be error in the light of what the Supreme Court said the law was on January 3, 1944.

Plaintiffs' contention is that the Mercoid decisions have made it law that the grant of a patent is a special privilege, to be narrowly confined to the subject matter of its claims; and that a claim for a combination is not infringed by the sale of one of the elements of the combination, less than the whole number recited in the patent claim, even though a single element may constitute the nub of the invention (the advance in the art) and even though such part might have been sold for the intentional purpose of being associated with another part or parts to form the combination recited in the claims; in short, that the patent law, now, no longer recognizes contributory infringement. We hesitate to adopt plaintiffs' point that Mercoid "announced * * * that should an injunction, or an accounting, be decreed for 'contributory infringement' it would amount to approval of a misuse of the patent and a violation of the Anti-Trust Laws." Although there were some of us who ventured to suggest that the law of contributory infringement was not rejected in toto by the Mercoid decisions,[8] a postreading of the government's brief, filed as amicus curiae in the Mercoid cases, prompts the suggestion that such skillful and learned presentation might well have been persuasive and it may be the doctrine of contributory infringement is no longer with us.[9] A reading of these two cases at first led us to believe that when it was stated "The controversy centers around the license agreement"[10] the rule of decision was when the patent owner by improper licenses extends the patent monopoly he is to be held as misusing his grant and violates the Anti-Trust Laws; or, he is rejected when he attempts to enforce the patent grant where he has unclean hands. It may be the tortfeasor, who aids and abets the direct infringer, is no longer called upon to exculpate himself in the courtroom. Clearly, the current emphasis is not on what is meant by "property" in a patent. Mr. Justice Holmes' semantic definition of "property" seems apt—"You cannot give it definiteness of contour by calling it a thing. It is a course of conduct * * * subject to substantial modification according to time and circumstances both in itself and in regard to what shall justify doing it a harm."[11] The latest announcement at hand states: "The primary purpose of our patent system is not reward of the individual but the advancement of the arts and sciences. Its inducement is directed to disclosure of advances in knowledge which will be beneficial to society; it is not a certificate of merit, but an incentive to disclosure." Sinclair & Carroll Co. v. Interchemical Corporation, 65 S.Ct. 1143, 1145. What proprietary interest—its metes and bounds

---

[7] Judge Maris in reviewing a somewhat analogous situation has said: "It is of obvious importance to all the litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals. No party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction." Crosley Corporation v. Hazeltine, 3 Cir., 122 F.2d 925, 930.

[8] See Detroit Lubricator Co. v. Toussaint, D.C.N.D.Ill., 57 F.Supp. 837;

Patent Infringement and the Public Interests—The Mercoid Cases, 12 George Washington L.Rev. 360; Patents—Contributory Infringement—Effect of Anti-Trust Acts, 44 Col.L.Rev. 447; Girdler Corporation v. E. I. Du Pont de Nemours & Co., D.C.Del., 56 F.Supp. 871.

[9] Landis Machine Co. v. Chaso Tool Co., 6 Cir., 141 F.2d 800, 801.

[10] Mr. Justice Douglas [320 U.S. 661, 64 S.Ct. 270].

[11] Truax v. Corrigan, 257 U.S. 312, 343, 42 S.Ct. 124, 133, 66 L.Ed. 254, 27 A.L.R. 375.

—rests in a patent owner seems at the present writing to be difficult to define. Critical re-examination of the original constitutional purposes of the patent laws and suggested procedures for their administration have so far not come to fruition. See TNEC, Mon. No. 31, Patents and Free Enterprise, p. 145 et seq.

In the interim, as to the case at bar, the conclusion is the Supreme Court has not, so far, rejected the doctrine as applying to a "straight" contributory infringement suit where there are no licenses or other tie-ins and no evidence of intention to extend the grant in violation of the Anti-Trust Laws, If there is implicit in the Mercoid cases a complete abandonment of the doctrine, then it is preferred to have the Third or Tenth Circuits make such interpretation.

Plaintiffs' theory supporting their cause of action contained in count 1 is that the devices under consideration in the Oklahoma proceedings were drill-bit assemblies and did not involve simply a cutter alone. Unless plaintiffs are correct and the District Court and the Tenth Circuit Court of Appeals were considering a combination, the violation of the Anti-Trust Laws argument must fail. Patent No. 1,647,753 is entitled a "drill cutter"; the claims claim cutters. The Circuit Court of Appeals, 97 F.2d 945, 947, refers to "conical cutters"; but in one instance, at least, there is reference to "one element in the combination covered by the patent is cutters" etc. Whether plaintiffs' infringement of defendant's patent was direct or contributory, should be left for the determination of the Courts in the Oklahoma proceeding, when plaintiffs seek—as they should seek if they are convinced of their cause—the cancellation of the decree on the basis of the law they urge is found in the Mercoid decisions.

■ No extended discussion will occur on argument that res adjudicata doctrine can not apply to the instant case because the decision of the Tenth Circuit Court of Appeals and the decision of the District Court does not constitute a final judgment. Where substantial rights of parties have been adjudicated and nothing remains but the ascertainment of the amount of award plaintiff should receive, the decree adjudicating the rights of the parties is regarded as the final decree. Victor Talking Machine Co. v. George, 3 Cir., 69 F.2d 871. Moreover, an action for declaratory judgment cannot be maintained for the veiled purpose of relitigating questions as to which a former judgment is conclusive. 154 A.L.R. 743.

■ Count 2. This count likewise seeks declaratory judgment relief. It contends the Master in the Oklahoma proceeding assumed to be included within the reference and considered not only two-cone bits but three-cone bits as examples of infringing devices. After argument, over objection, the District Court sustained the ruling of the Master. The prayers under this count seek findings, here, that the three-cone bits do not infringe patent No. 1,647,753, i.e., that such devices are not properly within the reference issued by the District Court in Oklahoma; that if the three-cone bits are construed to come within the patent then Scott and Wellensiek is invalid; that defendant ought to be restrained from asserting the three-cone bits come within the patent; that further proceedings before the Oklahoma Master with respect to this item should be restrained.

As just stated, declaratory judgment remedy is not available to a party concerning matters already adjudicated. 154 A.L.R. 743. If plaintiffs think error has been committed by the Master and the District Court in permitting the three-cone bits to be included within the reference, such error is subject to review by appeal to the Tenth Circuit Court of Appeals. At most, inclusion of this type of bit can only pertain to the question of damages. The Scott and Wellensiek patent No. 1,647,753 has now expired. Nothing is present to move this court by declaratory judgment relief to take from the Courts in Oklahoma an issue which is presently before them. Jurisdiction here will not be assumed as an alternative for the plaintiffs' taking an appeal from the District Court in Oklahoma to the Tenth Circuit Court of Appeals to test the question raised in count 2. Assuming jurisdiction, the Delaware court would, at best, have concurrent jurisdiction. The court which first acquires jurisdiction of a cause must first decide issues which are pending in the court which later acquires jurisdiction; Connecticut General Life Ins. Co. v. Pierce, 3 Cir., 110 F.2d 27; Milwaukee Gas Specialty Co. v. Mercoid Corp., 7 Cir., 104 F.2d 589; American Automobile Ins. Co. v. Freundt, 7 Cir., 103 F.2d 613; Staley Elevator Co. v. Otis Elevator Co., 35 F.Supp. 778; Mutual Life Ins. Co. of New York v. Brannen, D.C., 31 F.Supp. 123. Cf. Lockhart v. Mercer Tube & Mfg. Co., D.C. Del., 53 F.Supp. 301; Old Charter

Distillery Co. v. Continental Distill. Corp., D.C. Del., 59 F.Supp. 528, especially when it appears the Master's ruling was correct that he was permitted to consider as infringing devices specimens other than those actually before the Tenth Circuit Court of Appeals. Union Oil Co. of California v. American Bitumuls Co., 9 Cir., 109 F.2d 140; A. B. Dick Co. v. Marr, D.C., 48 F. Supp. 775. Clearly, the District Court in Oklahoma had jurisdiction to decide whether the Master had properly before him the three-cone bits. It said he did. The Declaratory Judgment Act was never contemplated to transfer a pending cause in one district to another district in order that a rehearing might be had in such latter district to review an alleged error of law.

Count 3. The final count also seeks declaratory judgment relief. It, too, was originally based on an alleged violation of the Anti-Trust Laws. This particular contention was withdrawn at oral argument, however.

This count plaintiffs urge "concerns a very live horse".[12] In substance it alleges plaintiffs Massachusetts and New Jersey sold and made a three-cone bit circa 1934-38 and other types circa 1937-42. Since 1942 additional types have been sold to the government, and of these a few sets have been sold to the general trade.

That which looks at controversy between the parties, in order to support the relief sought, is suggested by the following circumstances. Defendant gave notice in 1935 of two of its patents—Scott & Garfield No. 1,983,316 and Garfield No. 1,983,283—to plaintiffs on their then three-cone bits. Plaintiffs allege these patents are "coextensive" with a third patent, Garfield & Scott

No. 2,030,442, and as such the latter patent is equivalent to an infringement notice. In 1939 plaintiffs' attention was again called to Scott & Garfield No. 1,983.316 and Fletcher No. 1,856,627. In 1942 plaintiffs claim that, in addition to Scott & Wellensiek,[13] defendant issued an "omnibus charge" of infringement.[14] In short, plaintiffs aver that defendant owns a number of unexpired patents relating to rotary roller earth-boring drills, all late-comers in a crowded art, and among which eleven patents are named. Plaintiffs say that they are uninformed as to what additional patents to those it has specifically identified were within defendant's contemplation when it made its omnibus charge of infringement; and as plaintiffs have no way of knowing which or how many of defendant's patents they are alleged to have infringed or are infringing, they are required to institute the present action. Reference is made to an action for infringement brought by defendant against the Williams Iron Works Company[15] where defendant urged a construction of the Scott & Wellensiek and Fletcher patents and other patents of defendant, on its bits, which might bring within these patents devices sold by plaintiffs.

The prayers under this count are that none of plaintiffs' three-cone bits infringe any of defendant's patents, that none of the eleven specified patents are valid if construed to cover plaintiffs' three-cone bits or, in the alternative, that defendant be required to file a statement in this proceeding of any patents which it intends to assert have been, during the past six years, infringed by plaintiffs' devices. The usual injunctive relief is also sought.[16]

---

[12] Is this a sub-conscious admission, or a suggested implication, that the first two counts are concerned with "dead ones"?

[13] Admittedly, Scott & Wellensiek, having expired November 1, 1944, has no pertinency under count 3.

[14] The "omnibus charge" is based upon this situation. During the course of the Oklahoma litigation one of defendant's counsel, communicating with one of plaintiffs' counsel, in a letter, stated: "One of the difficulties in attempting to go beyond the issues of the suit itself arises from other patents owned by Hughes Tool Company [defendant], which are contended by Hughes Tool Company to have been infringed by Chicago Pneumatic Tool Company. If we are to go

beyond it in our Hughes Tool Company patents a consideration of such questions would further no possibility of settling."

[15] See 10 Cir., 109 F.2d 500.

[16] Defendant raised in this count, as it did in the others, that the count should be stricken under Rule 8(e) (absence of concise and direct statement) and Rule 12(f) (immateriality, impertinence and scandal). The issues in this case are understood by the court and they may be determined without recourse as to whether there has been compliance with the proper technics of pleading. For the purposes of this case, then, the objections to the pleadings in all three counts are rejected.

The substantive question raised by count 3 (now that the Anti-Trust Laws issue has been abandoned) is whether the count should be dismissed for failure of an actual controversy between the parties, for the statute is available only in those cases involving an actual controversy. Coffman v. Breeze Corporation, Inc., 323 U.S. 316, 324, 65 S.Ct. 298, and cases cited.

PX, P, Q and R show cutters secured in a bit-head to form a turn-cutter assembly and may be taken as typical of plaintiffs' cutter units referred to in count 3. These have been sold almost exclusively to the government during the war. These are the devices, among others, which plaintiffs fear may come within the patents construed in the Williams Iron Works Company case,[17] for, it is said, in that case defendant successfully contended for a construction of Scott & Wellensiek et al. which would bring within the Scott & Wellensiek et al. claims a drill-bit assembled from the parts disclosed as used by plaintiffs. Ever since Judge Phillips filed his opinion in that case, plaintiffs charge defendant has been holding the decree based upon that opinion over plaintiffs in terrorem. Plaintiffs fear unless relief is granted in the Delaware District they will be damaged and suffer irreparable loss.[18]

Defendant's conduct which is offered to support controversy, and hence jurisdiction, centers, after bringing all the allegations of count 3 into focus, on the following circumstances: Ten years ago and six years ago defendant stated it considered the devices then made by plaintiffs infringed three of defendant's patents. There is the "omnibus charge" of 1942 contained in a letter from counsel in an attempt to settle a pending lawsuit ("general contentions between the parties * * * will not suffice"[19]). Finally, there is the fact of the contentions urged by defendant, on the scope of its patents, in the Williams Iron Works Company case, which contentions, to repeat, plaintiffs fear may some day be asserted against them.

Settlement of a difference of opinion on the range of a decree rendered by another court as it may bear on possible future controversies between the same parties calls for an advisory opinion. It forms no structure for declaratory judgment relief. The "om-

nibus charge", an incident in the Oklahoma proceeding, contained in defendant's attorney's letter to opposing counsel, looking toward settlement, was nothing more than traditional lawyer's chess. The ten year old infringement notice should rest in peace. The day for justiciable resurrection has long since passed. Here, in the present, no charge appears the three-cutter assembly represented by PX, P, Q and R infringes any of defendant's patents, viz., that what plaintiffs now make or sell has been called into question by defendant with respect to any of its patents.

There remains the lone question as to what disposition should be made of Dewey & Almy Chemical Co. v. American Anode Co., 3 Cir., 137 F.2d 68, 70, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454, which is plaintiffs' main reliance under count 3. The persuasive fact which compelled that decision, according to the opinion, was the extraordinary licensing program which the patent-holder was forcing on the industry. The particular method of doing business prompted the Court to observe: "The patentee has used its patents as an economic weapon against other alleged infringers who declined to take a license. In its suit against the Lee-Tex Company, Anode has asserted that the coagulant-dip process practiced by that company constitutes an infringement. It is not denied that Anode has thus publicly asserted such a scope for its patent claims as to embrace the similar methods practiced commercially by Dewey & Almy. * * * It is a fair inference that Anode in bringing suit against the Lee-Tex Company was counting on the in terrorem effect upon other manufacturers * * *." The declaratory judgment plaintiff in that case had been advised, during negotiations for a proposed license, the extremities to which it would be required to go. It was an example of the "or-else" doctrine which euphemistically suggested: "'You may take a license or not; it is purely mandatory." There was nothing in the factual situation in that case comparable to the case at bar.

Aside from the portions pertaining to pleading deficiencies, defendant's motions, challenging plaintiffs' right to maintain the present action, should be granted. Let an order be submitted.

---

[17] See note 15, supra.

[18] The devices made by plaintiffs are for the United States. If defendant's patents are infringed by such manufacture and sale, defendant is required to sue the government in the Court of Claims, 35 U.S.C.A. §§ 68, 94.

[19] Board of Commissioners for Buras Levee Dist. v. Cockrell, 5 Cir., 91 F.2d 412, 413. (*and defendant's* *contentions*)