DEWEY & ALMY CHEMICAL CO. v. AMERICAN ANODE, Inc.

Civ. A. No. 261.

District Court, D. Delaware.

Nov. 19, 1942.

922

Hugh M. Morris and Alexander L. Nichols, both of Wilmington, Del., and George P. Dike, Cedric W. Porter, and George P. Towle, Jr. (of Dike, Calver and Porter), all of Boston, Mass., for plaintiff.

Arthur G. Connolly, of Wilmington, Del., and Harrison F. Lyman and Edgar H. Kent, both of Boston, Mass., for defendant.

LEAHY, District Judge.

This is an action for declaratory judgment that defendant's patents Nos. 1,825,-736 and 1,996,051, covering the production of latex rubber goods by the "coagulant dip" method, are invalid. Defendant has moved for summary judgment under Rule 56(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, on the ground that this court has no jurisdiction under the statute because there is no "actual controversy" between the parties.

The basis of this suit is the Federal Declaratory Judgment Act, 28 U.S. C.A. § 400, which—as interpreted by the courts—has served to remove to a large extent one of the evils of the patent system as it existed until 1934. Prior to

that time, a patent holder had, as one of the apparent incidents of ownership of his patent, the power to threaten alleged infringers with expensive patent litigation without even risking adjudication of the validity of his patent. If this did not suffice he could go even further by instituting suit and then obtaining dismissal without prejudice prior to decree. More often the patentee simply harassed by threat. Much of this particular sting has been extracted from the patent owner's bite by the statute now before me, which permits an alleged infringer to bring any "actual controversy" over validity or infringement of a patent into court and to keep it there until adjudication.

▆▆▆ The teachings of this Circuit look to a liberal interpretation of the Act in order to broaden its remedial scope[1]; and while the jurisdiction of the District Court is discretionary under the statute "this is a legal discretion which must * * * be exercised * * * in accordance with fixed principles of law." Crosley Corp. v. Westinghouse Electric & Manufacturing Company, 3 Cir., 130 F.2d 474, 475. The sole question presented here, therefore, is whether the jurisdictional facts are present to bring the case within the ambit of judicial discretion.

Defendant here has never actually threatened to sue plaintiff. Indeed, it appears that defendant never knew plaintiff was infringing until institution of this action. However plaintiff's pleadings and affidavits show that it is using the processes covered by defendant's patents in continuous commercial operation[2], and it predicates this suit upon its fear that on some day, to be chosen by defendant, after large damages have piled up, defendant will sue it as it has already sued another infringer.[3] Plaintiff argues that its affidavits in opposition to the motion for summary judgment disclose that defendant has set up an immense monopolistic patent pool and licensing system, the very existence of which is a threat to it. It charges that defendant owns at least 152 patents on rubber articles and methods of making them and holds under a single control many inventions developed by its former competitors—B. F. Goodrich Rubber Co., Eastman Kodak Company and Anode Rubber Co. (The Anode Rubber Co. combines in the United States the patent interests of the Hungarian Rubber Company, the British Dunlop Company and several other European concerns.) In 1937, plaintiff discussed with defendant the possibility of taking a license. The license offered covered 114 patents and applications and included two important covenants: (1) That plaintiff, as licensee, would acknowledge the validity of all the patents covered by the license, and (2) that plaintiff would assign to defendant for the benefit of the other licensees all inventions, past and future, "relating to any procedure or product within the scope of the inventions of the patent." Negotiations ended upon plaintiff's refusal to accept defendant's terms, and defendant did not hear from plaintiff again until the present suit was instituted on July 20, 1942. Plaintiff is of the opinion that by the acceptance of a license with the assignment and admission-of-validity clauses it would "deliver itself bound hand and foot to defendant." It would lose the fruits of many years of research and development in its laboratories—including many important inventions in the field of latex rubber technology.

Defendant argues that the issue of monopolistic practices on its part is wholly irrelevant but nevertheless states that its license policy is to relax rather than extend monopolistic control even though it itself is a manufacturer. Its insistence on the assignment clause in all licenses granted by it has the effect of making available to all licensees any improvement which any one of them may make, and thus

---

[1] "Some District Courts seem to have found difficulty in freeing themselves from the strait-jacket of the 'adversary' conception. They exhibit a tendency toward a narrow and technical interpretation of an Act intended to be construed in accordance with its broad and wise purpose. * * * Such a construction of the Federal Declaratory Judgment Act would, in our opinion, destroy its entire usefulness in patent litigation." Clark, J., in Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702, 703.

[2] Plaintiff asserts that it is using these processes in connection with certain war contracts for the government, in which it has agreed to indemnify the government if it should ever be adjudicated that such processes infringe any patents.

[3] See American Anode, Inc., v. Lee-Tex Rubber Products Corp., D.C., 45 F.Supp. 750, holding defendant's patents valid and infringed.

broadens the basis of competition among all manufacturers.

These are the facts upon which plaintiff predicates its right to a declaratory judgment.

■ No doubt there would be merit to a system whereby any one with a substantial fear of meeting an eventual patent infringement suit could elect the time for the adjudication of the validity or invalidity of the patent involved. Such a system has been used in certain foreign countries. Borchard, Declaratory Judgments, 2d Ed., 807, n. 20. But, in this country, there is not yet a complete mutuality of remedy between patentee and infringer. While a patentee can choose his time, the infringer—or the person who wants to know if he is one—cannot get into court until he has at least been threatened. Thus the patentee can keep the validity of his patent safe from adjudication by the simple expedient of silence and refraining from making threats.

■ Professor Borchard, op. cit. 807, in commenting on the system which would allow one to have his status as an infringer determined at any time, writes: "An early adjudication of such an issue might prevent much economic waste and useless expenditure of money. The patentee himself, desiring to enjoin an infringement, need give no advance notice that his patent even exists. And yet, it seems best to limit declaratory relief for the infringer to cases in which an adversary claim has been made against him * * *. This requirement, present in practically all the adjudicated cases, refutes the fear that patentees might be harassed by prospective infringers and be obliged continually to defend their patents. The fact that a patentee's claim of infringement is a condition precedent of this type of action places the matter of adjudication of the patent within control of the patentee, for, if he wishes to avoid adjudication, he can refrain from making charges of infringement. But having made the charge, he then exposes himself to adjudication. In other words, the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit. It requires an assertion of right under the patent to place the alleged infringer in gear to join issue and challenge the title."

■■ I believe the law as it presently exists has been correctly interpreted in Thermo-Plastics Corp. v. International P. Corp., D.C., 42 F.Supp. 408, 410.[4] In passing on a plaintiff's belief or fear that he may someday face an infringement suit and is thus entitled to relief under the Act, Judge Avis wrote: "Certainly no holder of a patent should be put to the expense of defending a suit by another person or sundry persons under the Declaratory Judgment Act, 28 U.S.C.A. § 400, unless that person or persons is or may be damaged by affirmative acts of the patent holder. * * * It is apparent that an effort is being made to call the defendant into court without proper proof of a statement amounting to a charge of infringement."

■ One seeks in vain among the proofs for written or spoken words, or affirmative conduct on the part of defendant which could be interpreted as a claim that its patents are being infringed by plaintiff. And nothing short of such proof will suffice.[5] I cannot find that defendant's alleged monopolistic practices have any pertinent place in the determination of the present motion. Nor does defendant's suit against a different and wholly independent infringer constitute a threat to plaintiff here.

To me it is clear that there is no actual controversy between the parties to this suit. Defendant will have summary judgment.

---

[4] In Maurer & Sons Co. v. Andrews, D.C., 30 F.Supp. 637, 639, Judge Kirkpatrick pointed out that an "actual controversy" cannot be created by one taking a position and then challenging another to dispute it. Moreover, a threat of infringement may not be claimed by inferences. Meinecke v. Eagle Druggists Supply Co., D.C., 19 F.Supp. 523, 525. See also Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458.

[5] In Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702, on which case plaintiff relies heavily, there was a threat to plaintiff as a member of a group.