**APEX HOSIERY CO. v. KNITTING MACHINES CORPORATION.**

**Civ. A. No. 1205.**

United States District Court
D. Delaware.

April 20, 1950.

C. A. Southerland and Richard F. Corroon (Southerland, Berl & Potter), Wilmington, Del., Charles H. Howson and Charles H. Howson, Jr. (Howson & Howson), Philadelphia, Pa., for plaintiff.

Hugh M. Morris and Alexander L. Nichols (Morris, Steel, Nichols & Arsht), Wilmington, Del., Hector M. Holmes and Maxwell Fish (Fish, Richardson & Neave), Boston, Mass., Richard Swan Buell and John B. Tittmann (McLanahan, Merritt & Ingraham), New York City, for defendant.

RODNEY, District Judge.

The question in the present case is whether a patentee, by the mere fact of bringing a patent infringement suit in Massachusetts against a user of machinery, has made such a threat or established such a controversy as to the patents involved in the machines as to enable another user of the same machines in a different district to maintain an action for a declaratory judgment as to the validity of the patents.

The defendant, Knitting Machines Corporation, a Delaware corporation, is the owner of five certain patents, termed the Miller patents, having to do with machines for the production of full-fashioned hosiery. Certain other machines also having to do with the production of full-fashioned hosiery are made by Textile Machine Works of Reading, Pennsylvania, and among the users of machines made by Textile Machine Works are Hayward Hosiery Company of Massachusetts and Apex Hosiery Company of Philadelphia, Pennsylvania.

On January 9, 1948 Knitting Machines Corporation, the present defendant, together with Kalio, Inc., a New York corporation, owner of one patent licensed to Knitting Machines Corporation, brought suit in the District Court of Massachusetts against Hayward Hosiery Company, a

small user of machines made by Textile Machine Works. That suit charged that the machines made by Textile Machine Works and used by Hayward Hosiery Company infringed the Miller patents owned by Knitting Machines Corporation and the patent of Kalio. It is alleged that such suit has been prosecuted through extensive intermediate proceedings and has now been assigned to a judge for a hearing.

On April 14, 1949 Apex Hosiery Company brought this present declaratory judgment proceeding pursuant to the Statute.[1] By this suit it is sought to have the five Miller patents owned by the defendant held to be invalid and not infringed by the plaintiff.

The complaint alleges that the defendant has full knowledge of the plaintiff's use of the full-fashioned machines made by Textile Machine Works and that, while no infringement suit has been brought by the defendant against the plaintiff, yet such infringement suit has been brought by the defendant against another user of machines made by Textile Machine Works which are similar in all material respects to the machines used by the plaintiff.

The defendant has filed a motion to dismiss the complaint upon two grounds, viz., (1) that the court has no jurisdiction, and (2) that the complaint fails to state a claim upon which relief can be granted. Both grounds are based upon the allegation that there is no actual controversy between the parties. It is tacitly agreed that the only existent foundation for the controversy exists in the institution and maintenance of the infringement suit in Massachusetts.

In the alternative to the motion of the defendant to dismiss the complaint the defendant moves that this court stay the present proceedings because, it is alleged, Textile Machine Works, the manufacturer of the machines used by both Hayward Hosiery Company and Apex Hosiery Company, is substantially controlling the litigation in both jurisdictions and the Massachusetts action is, after much preparation, now ready for trial.

The first question to be determined is whether an infringement suit brought by a patentee against a user of machines is such a threat or notice to other users of such machines as will, of and by itself, constitute such an "actual controversy" as to enable such other users to maintain declaratory judgment proceedings as to the validity of the patents of such patentee. The answer involves an examination of the Declaratory Judgment Act as applied to patents and its history and underlying purposes. Some slight consideration of this question was recently given by this court in General Motors Corp. v. California Research Corp., 9 F.R.D. 565. There it was pointed out that prior to the adoption of the Declaratory Judgment Act in 1934 questions of validity or infringement of a patent could be litigated either under R.S. § 4919, 35 U.S.C.A. § 67, or R.S. § 4921, 35 U.S.C.A. § 70, but only at the instance of the patentee. The patentee could threaten a user of an article with impending infringement proceedings, but except in rare instances the alleged infringer could not initiate proceedings to determine the validity of the patents claimed by the patentee. The Declaratory Judgment Act changed this, and upon a threat of infringement being made, a controversy is created and a user of the article may have determined the validity of the patents and questions of infringement. The facts of the present case bring into strong relief the somewhat anomalous change which, it is claimed, has been created by the Act. Since the passage of the Act, as indicated, if the patentee takes such action as to create a controversy between the claims of his patent and an alleged infringer, such alleged infringer can litigate the validity of the patent. If the action of the patentee is public and general, then any one as to whom the controversy is created may seek to solve the controversy. If the alleged threat or action of the patentee, however, is private and personal to one person, then I assume that the controversy is created only as to that person. If the alleged infringer against whom a private and per-

1. 28 U.S.C.A. § 2201.

sonal threat is made refuses to accept the gauntlet of validity thus thrown down, what can the patentee do and what are the consequences of such action? He must either institute an infringement proceeding or allow the alleged infringer to continue without molestation. If he institutes an infringement proceeding, the question first posed immediately recurs, viz., does such suit establish a controversy as to other users and entitle them individually to institute declaratory judgment actions? The answer here given largely rests upon conclusions binding upon this court and these must now be considered.

Of primary importance is the case Dewey & Almy Chemical Co. v. American Anode, Inc.[2] In that case, commenced in 1942, the District Court noted that some years previously discussions had been had between the parties as to the granting and accepting a patent license and that these discussions had terminated in 1937 because of the alleged unreasonable demands of the patentee, but that the defendant knew of no infringing activities of the plaintiff until suit was brought in 1942. In 1940 defendant Anode had brought an infringement suit against the Lee-Tex Company which had refused to take a patent license. The District Court viewed any monopolistic practices of the defendant as not pertinent to the question of the existence of any threat or controversy and held that the defendant's suit against an independent infringer did not constitute a threat to the plaintiff and granted a summary judgment for the defendant. This conclusion was reversed in 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454, and the views of the then Circuit Court of Appeals are the subject of dispute and must be here examined.

In Chicago Pneumatic Tool Co. v. Hughes Tool Co., 61 F.Supp. 767, 772, the District Court of Delaware, in considering the Dewey & Almy case in the appellate court, said: "The persuasive fact which compelled that decision, according to the opinion, was the extraordinary licensing program which the patent-holder was forcing on the industry."

The judgment of the Chicago Pneumatic Tool Company case was affirmed in the Circuit Court of Appeals on the opinion of the District Court in 3 Cir., 156 F. 2d 981.

The language of the Circuit Court of Appeals in the Dewey & Almy case with respect to the extent to which a threat or controversy as to one user of a process may be implicit in the bringing of an action by the patentee against another user must be considered. The Circuit Court said: "In its suit against the Lee-Tex Company, Anode has asserted that the coagulant-dip process practiced by that company constitutes an infringement. It is not denied that Anode has thus publicly asserted such a scope for its patent claims as to embrace the similar methods practiced commercially by Dewey & Almy. We think this assertion evidences the existence of a substantial controversy between Anode and Dewey & Almy (parties manifestly having adverse legal interests), 'of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" [137 F.2d 70]

Again, the court stated: "If Anode had published a printed notice or circular asserting that use of the described coagulant-dip process constitutes an infringement of its patents this would undoubtedly mark the existence of an actual controversy between the patentee and all persons who engaged in practicing the process, whether they were known to the patentee or not."

The court then continued: "Anode's suit against the Lee-Tex Company, with the broad scope asserted therein for its patent claims, constitutes equally effective notice to whom it may concern that they practice the process at their peril."

By compulsory analogy and a mere substitution of names, a publication by Knitting Machines Corporation that the use of certain machines would constitute an infringement would mark the existence of

2. D.C. 47 F.Supp. 921; reversed 3 Cir., 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S. Ct. 70, 88 L.Ed. 454.

an actual controversy. By the continued substitution of names the clear analogy continues and Knitting Machines Corporation's suit against Hayward Hosiery Company, with the broad scope asserted therein for its patent claims, constitutes equally effective notice to whom it may concern that they use the machines at their peril and the matter seems within the precise language of the Dewey & Almy case. Indeed, the present case is stronger than the Dewey & Almy case because it is here alleged (although denied by the defendant) that Knitting Machines Corporation had full knowledge of the machines used by Apex Hosiery Company and that these machines were similar in all material respects to the machines involved in the Massachusetts action and were made by the same manufacturer.

If Knitting Machines Corporation should, by news item or paid advertisement, assert that it had instituted proceedings in Massachusetts for the protection of its patent claims as against machines made by Textile Machine Works and used by Hayward Hosiery Company, it could, perhaps, be considered such a notice of the claims of the patents as, against other users of the same machines, would establish an actual controversy. It would be difficult to consider such conduct as giving notice of a more actionable nature than is inherent in the institution and maintenance of the suit itself. Whether the public character of an infringement suit in Massachusetts, with its attendant notoriety, is increased by the statutory duty of the clerk of the court to notify the Commissioner of Patents of the pendency of the suit, and the duty of the Commissioner to make public record of it,[3] need not be considered.

In Federal Telephone & Radio Corp. v. Associated Telephone & Telegraph Co., 169 F.2d 1012, 1013, the Circuit Court of Appeals of this Third Circuit held that a public advertisement that a patentee owned or controlled patents which "cover the operating features which are vital to today's telephone traffic and service con-

ditions", coupled with an advertisement that the patentee would protect its patents by suit, established an actual controversy and justiciable threat under the Declaratory Judgment Act.

There is not involved in this case a question as to whether this court is of the opinion that a threat or controversy exists by reason of the Massachusetts action, but rather the question as to whether the Court of Appeals has so determined the matter as to be binding on this court. Perhaps it may not precisely be said that the institution and pendency of the Massachusetts case is a direct threat against other users of the pertinent machine. It may be, however, such an assertion of rights and claims under the patent as is adverse to the rights of other users of the machine known to the patentee and which machines are known to be similar to those in suit.

I am of the opinion that the reasoning of the Dewey & Almy case is binding on this court as to the present question and that the motion to dismiss the complaint must be denied.

Attention must be given to the alternative motion of the defendant, viz., that the present action involving the same patents as the Massachusetts action be stayed until the determination of that action which is alleged to be, after much preparation, ready for trial.

The plaintiff, Apex, resists the stay and contends that since neither it nor the manufacturer of the machines is a party to the Massachusetts action, any determination by that court will, in no sense, be res adjudicata or be binding upon Apex or upon this court.

The present defendant contends that a decision of the Massachusetts court, if in its favor, would be res adjudicata because, as it contends, the manufacturer of the machines, Textile Machine Works, is controlling both litigations (defending the one and prosecuting the other) at least to the extent of defraying the expense of counsel in both suits

3. 35 U.S.C.A. § 70.

It seems unnecessary to determine this interesting question. It is based upon a conclusion of the Massachusetts case in favor of Knitting Machines Corporation. It is not entirely clear that the same situation would exist if Knitting Machines Corporation did not prevail in the Massachusetts action. Since the present case has been argued, the Court of Appeals for this Third Circuit has determined the case of Bruszewski v. United States, 3 Cir., 1950, 181 F.2d 419, 423, involving the question of res adjudicata. One of the judges poses a hypothetical case from the Restatement of Judgments which is precisely the case now being considered, viz.: "A brings an action against B for infringement of a patent. B defends on the ground that the alleged patent was void and obtains judgment. A brings an action for infringement of the same patent against C who seeks to interpose the judgment in favor of B as res judicata, but setting up no relation with B."

The opinion in the Bruszewski case is construed by one of the judges as meaning that A has had his day in court, has lost, and should not have another chance.

The hypothetical case is exactly pertinent if Knitting Machines Corporation would be unsuccessful in its suit in Massachusetts and should subsequently attempt to litigate the validity of the patents against Apex.

■ There are, among others, two great values attaching to the declaratory judgment proceedings in patent cases. One is the opportunity of bringing the patents into the open and having their validity tested. As to the present patents, the Miller patents, that is being done in the Massachusetts action. Another great value is the limitation of potential and continuing damages. Apex claims it is expanding its use of the machines and may suffer additional damages if the present action is stayed. In my opinion, this latter suggestion may be met by a granting of the stay, provided that Knitting Machines Corporation files in this court a waiver of any claim for damages against Apex for infringement by reason of the stay.

An order may be presented denying the motion to dismiss the complaint and a separate order granting the stay of proceedings in this case pending the determination of the Massachusetts action or until this present stay is lifted by this court. This order for stay will include or be based upon a waiver by Knitting Machines Corporation of any claim for damages for infringement of its patents by Apex for the period from the date of the order and until the order of such stay is lifted by this court.

In this way, as it appears to this court, the validity of the patents may be tested, the accruing of additional damages be prevented, and the needless and burdensome trouble and expense of litigating two identical suits at the same time and at different places be obviated.