NEWELL v. O. A. NEWTON & SON CO. et al.

Civ. No. 1197.

United States District Court
D. Delaware.

Dec. 5, 1950.

356

Thomas Cooch (Morford, Bennethum, Marvel & Cooch) of Wilmington, Del., and K. Thomas Everngam of Denton, Md., for plaintiff.

Hugh M. Morris and George T. Coulson (Morris, Steel, Nichols & Arsht) of Wilmington, Del., and Caleb M. Wright of Georgetown, Del., for defendants.

RODNEY, District Judge.

This case is before the court upon two separate motions: (1) motion of the plaintiff to dismiss the counterclaim of the defendant, O. A. Newton & Son Company; and (2) motion of defendants for the entry of an order requiring the plaintiff to post

a bond as security for costs in this action.

An understanding of these motions requires a restatement of the nature of the case and of the procedural steps which have been taken up to the present time.

In his complaint plaintiff alleges that he invented a chicken house manure conveyor; that as a result of dealings between the plaintiff and the defendants, a confidential relationship was created; that the defendants have caused conveyors to be made for their own account, wrongfully using the design of conveyor as designed and developed by the plaintiff; that the plaintiff observed about twenty of such conveyors being manufactured and they were "identical with his own, with one or two inconsequential changes;" that the plaintiff had applied for a patent on his invention; and that defendant's actions constituted unfair competition and "will infringe on his prior patent rights when granted."

The defendants first moved to dismiss the complaint for failure to state a claim upon which relief could be granted. After argument, the court denied this motion. At the time of the hearing on the motion just mentioned the court was informed that a patent had been issued to the plaintiff on his chicken house manure conveyor after the institution of this suit. Subsequently, the corporate defendant moved for leave to file a supplemental answer, setting up a counterclaim.

The substance of the counterclaim was that a controversy existed between the plaintiff and defendant as to the infringement of the plaintiff's patent rights by the defendant. The counterclaim sought a declaratory judgment as to the validity of the patent and its infringement by the defendant. The plaintiff opposed the motion for leave to file the supplemental answer on the ground of improper venue, but the court held that the venue was proper for purposes of the counterclaim and granted the defendant's motion.[1]

The plaintiff has now moved to dismiss the counterclaim on the ground that there is no "actual controversy" between the parties. The substance of the plaintiff's contention is that there is no showing that he has charged the defendant with infringement subsequent to the time his patent was actually issued, and that the charge of possible future infringement has created no present controversy because the claims of the patent as issued are all different, to a greater or less degree, from the claims incorporated in the plaintiff's application for a patent.

 The Federal Declaratory Judgment statute is now embodied in Sections 2201 and 2202 of the Judicial Code.[2] The existence of an "actual controversy" is of course a necessary prerequisite to the exercise of the power to declare rights and other legal relations. In Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617, the Supreme Court said that in the phrase "actual controversy," the word "actual" was one of emphasis rather than of definition, and the court then went on to define or describe the term "controversy" in this way, 300 U.S. at pages 240 et seq., 57 S.Ct. at page 464: "A 'controversy' in this sense [the justiciable sense] must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * When there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. * * *"

---

1. 10 F.R.D. 286.

2. 28 U.S.C.A. §§ 2201 and 2202.

In Dewey & Almy Chemical Co. v. American Anode, Inc., 3 Cir., 137 F.2d 68, certiorari denied 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454, the Circuit Court of Appeals for this Circuit made the following observations regarding a declaratory judgment action relating to patents, at page 70 of 137 F.2d:

"The statutory provision limiting declaratory judgments to 'cases of actual controversy' is no more than a recognition that the federal judicial power extends only to 'cases' or 'controversies' in the constitutional sense. * * * This constitutional requirement, as applied to declaratory judgments, is not interpreted in any narrow or technical sense. * * *

"It is obvious that a person not now engaged in possible infringing conduct, and having no immediate intention of doing so, but having an academic interest in the law of patents, could not obtain a declaratory judgment against a patentee as to the validity or scope of the patent. * *

"This court said in the Treemond case [Treemond Co. v. Schering Corp., 3 Cir.], supra, 122 F.2d [702] at page 705, that an 'actual controversy' within the meaning of the Act 'does not exist until the patentee makes some claim that his patent is being infringed.' Perhaps this statement should be qualified so as to admit the possibility of declaratory judgment where the patentee has claimed that the manufacture of a certain product or the practising of a certain process would constitute an infringement and a person who is about to engage in such alleged infringing conduct seeks a declaration of his right to do so: See Borchard, supra, at page 807. But it may be conceded that 'the mere existence of the patent is not a cloud on title, enabling any apprehensive manufacturer to remove it by suit.' Borchard, ibid."

■ Thus it is clear that even under a liberal interpretation of the Declaratory Judgment Act as applied to patents, some charge of infringement, express or implied, is a necessary prerequisite to the existence of jurisdiction in the court. The mere existence of the patent does not create a justiciable controversy.

■ In the present case the charges of infringement (perhaps they should be called charges of possible or potential infringement), were made after the patent application was filed but were made before the patent issued. Is there nevertheless "an actual controversy" between the parties?

■ There can be little doubt that if either of the two factors mentioned in the preceding paragraph (i. e. charges of potential infringement and the existence of the patent) had existed alone, there would have been no proper basis for the maintenance of a declaratory judgment action. Thus it seems reasonably clear that the charge of potential infringement of the patent for which the plaintiff had applied but which had not yet been issued, could not, by itself, have given rise to "an actual controversy" prior to the issuance of the patent. The controversy, if any, would have been of a hypothetical nature, for until the patent is issued the inventor has only an inchoate right which may or may not be perfected.[3] Likewise, as has been already pointed out, the mere existence of the patent does not of itself and without the charge of infringement create "an actual controversy." Nevertheless, I think that certain cases in this and some other Circuits indicate that where a patent exists the charge of infringement, express or implied, may be found so as to create an actual controversy without such charge being spelled out with exactitude. For example, it was intimated in the Dewey & Almy case that the actual manufacture, use or sale of the supposedly infringing article might not be essential to the existence of a controversy. In Federal Telephone & Radio Corp. v. Associated Tel. & Tel. Co., 3 Cir., 169 F.2d 1012, an advertisement containing an implicit threat of possible infringement suits against operating telephone companies if they infringed any of a large number of patents having to do with automatic telephony (but otherwise unidentified) was held to have brought

3. Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504.

about an actual controversy between the patentee and a competing manufacturer of automatic telephone equipment. In Apex Hosiery Co. v. Knitting Machines Corp., D.C. 90 F.Supp. 763, an infringement suit against a user of machines was held to have given rise to an actual controversy between another user of the same machines and the patentee.

Here the plaintiff, before the patent was issued, publicly asserted that the claims of the patent for which he had applied would embrace the machines being made and sold by the defendant. If the patent as issued had embodied exactly the same claims as those set out in the application, it seems to me that from any rational or practical viewpoint there would then have been in existence "an actual controversy," that is to say, a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. There would have been the patent, coupled with a public assertion, made only a short time before, that its very claims embraced the defendant's machines. The "in terrorem" quality of the charges made just before the issuance of the patent would seem in such a case to be as obvious as in the case of charges made after the issuance of the patent, and the need of the procedural remedy afforded by a declaratory judgment action would be as great.

The plaintiff, however, contends that such is not precisely the situation here because the claims of the patent as issued are all, to some degree, different from the claims appearing in the application for the patent. In my opinion this does not materially alter the situation. I think that there was implicit in the plaintiff's charge of potential infringement the assertion that defendant's machines would infringe any patent that would be granted with respect to the conveyor described in the plaintiff's patent application.

■ It does not appear that the defendant corporation has made, sold or used any of the machines which plaintiff charged would infringe his patent rights, since the time that the patent was actually issued. However, the allegation that it has such conveyors on hand, and that it desires and intends to continue to make, use and sell them, is sufficient to support a suit for declaratory judgment by the defendant.[4]

The plaintiff has made the additional point that the exercise of jurisdiction in a declaratory judgment case is discretionary with the court, and that in this instance the court should exercise its discretion not to entertain the defendant's counterclaim, apparently on the ground of the defendant's alleged inequitable conduct as set forth in the plaintiff's complaint.

■ The correctness of the general proposition stated by the plaintiff, viz., that inequitable conduct may operate to prevent the exercise of discretionary power, may be granted without further discussion. It is entirely true that the inequitable conduct of the party seeking declaratory relief may move the court to decline to entertain the case.[5] But, generally speaking, the inequitable conduct complained of must bear an intimate relationship to the relief sought to bring this principle into operation. Substantially the same argument as that made by the plaintiff here was advanced and rejected in Buromin Co. v. National Aluminate Corp., D.C., 70 F.Supp. 214, and for the reasons therein stated it must be rejected here.

■ I conclude, therefore, that plaintiff's motion to dismiss the corporate defendant's counterclaim must be denied.

■ The defendant has moved for an order requiring the plaintiff to post a bond as security for costs. Some slight consideration of the source of power to require security for costs was had in this court in Burke v. Central-Illinois Securities Corp., 9 F.R.D. 426. The Federal Rules of Civil Procedure, 28 U.S.C.A. are silent as to security for costs. Rule 83 provides that district courts may make local rules not inconsistent with the rules as promulgated by the Supreme Court. In the District of Delaware no general

4. Alfred Hofmann, Inc., v. Knitting Machines Corp., 3 Cir., 123 F.2d 458, 460 and 461.

5. See Camfield Mfg. Co. v. McGraw Electric Co., D.C., 70 F.Supp. 477.

rule governing security of costs has been adopted. Rule 83, supra, also provides, "In all cases; not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." I am of the opinion that the foregoing express power as well as power emanating from the inherent nature of the court itself (if not limited by rule or statute) gives to the court a discretion with relation to security for costs. The same power which grants discretion to adopt or not adopt a local rule operates also to give power to do what may be necessary to secure justice in matters pending.

It is true that the plaintiff in this case is a non-resident of this district, but I think the order moved for should not be entered. There appear to be no extraordinary circumstances in this case which should move the court to exercise its discretion in favor of requiring the bond. If the defendants' motion were granted in this case there would seem to be no reason why a bond as security for costs should not be required of almost every non-resident plaintiff. The motion for security of costs must be denied.

Appropriate orders may be submitted.