**FEDERAL TELEPHONE & RADIO CORP. v. ASSOCIATED TELEPHONE AND TELEGRAPH CO. et al.**

No. 9445.

Circuit Court of Appeals
Third Circuit.
Argued Dec. 19, 1947.
Decided June 16, 1948.

Rehearing Denied Aug. 20, 1948.
Writ of Certiorari Denied Nov. 8, 1948.
See 69 S.Ct. 133.

Paul Kolisch, of New York City (Darby & Darby, and Edward D. Phinney, all of New York City, and E. Ennalls Berl, of Wilmington, Del., on the brief), for appellant.

Harry W. Lindsey, of Chicago, Ill. (Glen E. Smith, Harry B. Sutter and Thomas R. Mulroy, all of Chicago, Ill., and Robert H. Richards, of Wilmington, Del., on the brief), for appellees.

Before BIGGS, GOODRICH, and O'CONNELL, Circuit Judges.

BIGGS, Circuit Judge.

Federal Telephone and Radio Corporation, "Federal", brought suit against Associated Telephone and Telegraph Com-

pany and its subsidiaries, Automatic Electric Company and Automatic Electric Laboratories, Inc., "Automatic Electric", seeking an adjudication pursuant to the Declaratory Judgments Act, Section 274d of the Judicial Code, 28 U.S.C.A. § 400, that all the patents owned or controlled by Automatic Electric and designated in a certain advertisement, referred to repeatedly hereinafter, are invalid and are not infringed by the apparatus, systems or assemblies of Federal as set out in Exhibits 1, 2, 3, and 4 accompanying the complaint. The complaint designates 7 "means" patents[1] alleged to be owned by Automatic Electric. These patents cover apparatus, systems and assemblies for telephony which may occupy an important, or even a dominant, position in that art. For the sake of brevity we will refer to Federal's apparatus, systems and assemblies and to those of Automatic Electric simply as "apparatus". The complaint also alleges that Federal is engaged in the manufacture and sale of telephone apparatus which "afford operating features which are vital to today's traffic and service conditions"; that Automatic Electric has asserted by an advertisement, the second of two set out in note 3 hereinafter, that it owns or controls patents which "cover the operating features which are vital to today's telephone traffic and service conditions * * *." In the advertisement referred to Automatic Electric states that it owns over 1,600 United States[2] patents and is licensed in the United States "under thousands of other patents" and that the 1,600 United States patents cover "operating features which are vital to today's traffic and service conditions." The complaint goes on to allege that Automatic Electric by advertisement threatens suits against Federal's customers if they make use of apparatus manufactured by Federal; and that each of Automatic Electric's 7 patents, designated in the complaint—by inference, at least, included in the 1,600 United States patents referred to in the second advertisement—contain "one or more claims finding literal response" in Federal's apparatus though none of these claims, if properly construed, would sustain an infringement suit. Automatic Electric filed a motion to dismiss on the ground that no justiciable controversy was set out in the complaint. The motion was supported by affidavits which reproduce the advertisements[3] of Automatic Electric referred

[1] As follows:

No. 1,907,087 to M. L. Nelson, dated May 2, 1933;

No. 2,113,119 to R. Taylor et al., dated April 5, 1938;

No. 1,922,192 to J. I. Bellamy, dated August 15, 1933;

No. 2,352,492 to J. E. Ostline, dated June 27, 1944;

No. 1,792,454 to J. H. Voss, dated February 10, 1931;

No. 1,888,337 to J. H. Voss, dated November 22, 1932;

No. 2,087,930 to J. H. Voss, dated July 27, 1937.

[2] The exact language is "owns in the United States * * *". We think that the words quoted require the conclusion, at least at this stage of the case, that the 1,600 patents issued from the United States Patent Office.

[3] The first, Defendants' Exhibit "A", was published in the March 9, 1946, issue of "Telephone" and in the March 1946 issue of "Telephone Engineering and Management." It is as follows:

"Important Notice

"Automatic Electric Company and or its affiliated companies own, or are exclusively licensed under, a large number of patents which have cost many millions of dollars.

"During the war period in certain instances we have expressly permitted the use of some of our patents without compensation to us by other individuals or concerns in the production of apparatus for military or naval uses.

"Now that the war is ended, we hereby give public notice that we expect no use will hereafter be made of any of our patents except by individuals or concerns duly licensed thereunder.

"Automatic Electric

Originators and Developers of the Strowger Step-by-Step 'Director' for Register-Sender-Translator Operation * * * Machine Switching Automatic Dial Systems

Makers of Telephone, Signaling and Communication Apparatus * * * Electrical Engineers, Designers and Consultants Distributors in U. S. and Possessions

Automatic Electric Sales Corporation, 1033 W. Van Buren St., Chicago 7, U. S. A.

Export Distributors: International Automatic Electric Corporation"

The second advertisement, Defendants'

to in the complaint. It is agreed by the parties that the first advertisement was directed by Automatic Electric to competing manufacturers and that the second was addressed to operating telephone companies.[4] It also appears from the affidavits that Federal and Automatic Electric have competed with each other for the business of operating telephone companies in the United States.

The court below sustained the motion and dismissed the complaint, stating, "The declaratory judgment procedure must be based upon an actual controversy between the parties, which is not shown here to exist. To hold a controversy existent in this

---

Exhibit "B", was published in the April 6, 1946, issue of "Telephone" and reads as follows:

"Automatic Electric Company

"Owns in the United States Over 1600 Patents And is Licensed in the United States Under Thousands of Other Patents

"The companies of the Automatic Electric group own over 1600 United States patents, which have cost many millons of dollars in scientific research and delevopment and laboratory and field investigations, and which represent advanced techniques of important and steadily increasing value to telephone operating companies. In addition, Automatic Electric Company is licensed under thousands of other patents.

"These patents, and the improvements they represent, the majority of which relate to Strowger (step-by-step) automatic telephone equipment, have brought, and are bringing large benefits to Independent operating companies and their subscribers. They have made it possible for the Independent industry to provide service and *operating features* which are not only in tune with the latest approved practices, but which are also vital to today's traffic and service conditions.

"Through the use of these patents and improvements they represent, Independent companies have been able to raise *service standards* to a level *never reached* in any other country. Moreover, they are able to render such service on a consistently profitable basis. We know of no exchange equipped with Strowger step-by-step apparatus which has not been able to show a consistently good earnings record over the years of its use.

"It is important for Independent operating companies to know and to understand that these broad benefits could not have been brought to the Independent field except for the large expenditures of money which Automatic Electric has made for research, development, design, laboratory and field tests, patent filing procedures, and acquisition of licenses.

"Automatic Electric and the Independent operating companies therefore have a common interest in the benefits which these patents bring to the industry.

Naturally, we must not only take every possible step to protect our own patent position, but also to improve that position so that our customers will derive maximum benefit from new techniques. In doing so, we are able to assure purchasers of equipment we manufacture that we will protect them against loss or damage resulting from any patent infringement suits on account of the use of such equipment.

"During the war period, we have expressly permitted the use of certain of our patents, without compensation to us, by other individuals or concerns in the production of apparatus for military or naval uses.

"Now that the war is over, as we have stated in an earlier announcement, we expect and insist that no use will hereafter be made of any of our patents except by individuals or concerns duly licensed thereunder. Prospective purchasers of automatic equipment and apparatus are justified, for their own protection, in fully investigating, as occasion warrants, the patent situation relating to any apparatus or equipment offered for sale to them.

"It is our intent so to conduct our business that Independent operating companies will continue to derive increasing benefit from the inventions of our technicians, subject to the rights of ourselves and other manufacturers under the patent laws and the interests of the customers we serve.

"Automatic Electric

"Originators and Developers of the Strowger Step-by-Step 'Director' for Register-Sender-Translator Operation * * * Machine Switching Automatic Dial Systems

"Makers of Telephone, Signaling and Communication Apparatus * * * Electrical Engineers, Designers and Consultants Distributors in U. S. and Possessions

Automatic Electric Sales Corporation, 1033 W. Van Buren St., Chicago 7, U. S. A.

Export Distributors: International Automatic Electric Corporation"

4 See p. 4 of Federal's brief and p. 50 of the transcript of the argument before this court.

case one must go immeasurably further than any former case." D.C., 71 F.Supp. 877, 882. Federal appealed.

■ We cannot agree with the conclusions of the court below for the reasons stated hereinafter. The second advertisement, previously referred to, set out in the second paragraph of footnote 3, and addressed to operating telephone companies, asserts in substance that Automatic Electric exercises virtual control over the art and industry of telephony since it owns the "vital" patents. The word "vital" means "necessary to life" or "essential". See Webster's New International Dictionary, 2nd Edition. The identity of language contained in paragraphs 5 and 6 of the complaint and in the second advertisement— that Automatic Electric's patents are alleged to cover operating features "vital to today's traffic and service conditions."— is not coincidental but purposeful for it is on this phase, plus the allegation that each of Automatic Electric's 7 patents contain claims which find literal response in Federal's apparatus, that Federal has bottomed its entire complaint. Taking those inferences most favorable to Federal, as must be done on motion to dismiss, the conclusion is inescapable that an area of conflict between Automatic Electric's 7 patents and Federal's apparatus is established by the pleading.

It may be asserted of course that this area of conflict results from mere words. This is true of any pleading and the case at bar is at the pleading stage and the allegations of the complaint must be tested on a broad basis. While the area of conflict is not defined as sharply as in Treemond Co. v. Schering Corp., 3 Cir., 122 F. 2d 702, where a single product and a single patent were involved, it is sufficiently clear to afford a justiciable controversy if the second advertisement threatens infringement suit against Federal or its customers. It may be that when the issues are more sharply defined by answer or when proof is offered after the case is at issue the field of conflict between Federal and Automatic Electric may be greatly narrowed or may

possibly even disappear. For example it may be demonstrated that neither Automatic Electric's patents nor Federal's apparatus are vital to today's telephone traffic and service conditions. As to this and similar matters we, of course, presently hazard no conjecture. We merely state that on the present record, Federal's apparatus and Automatic Electric's 7 patents are alleged to be in conflict and, if infringement suits are in fact threatened, a justiciable controversy is alleged within the purview of the Declaratory Judgments Act.

■ We think that the second advertisement does threaten Federal or its customers with infringement suits. While the court below concluded [5] that the second advertisement identifies "no patent which, by any charge of infringement, is constructively tendered for a determination of the issue of validity * * *", we cannot agree with this view. Automatic Electric has tendered its entire stock of patents to the trade and in substance has asserted that anyone making use of the disclosures of any of them without permission or license is in danger of an infringement suit. Indeed, the second advertisement states that Automatic Electric expects and insists "that no use will hereafter be made of *any* [6] of our patents * * *" except upon license. Here, as we have shown, Automatic Electric's 7 patents may be employed as the basis of an infringement suit against any operating telephone company which makes use of Federal's apparatus which affords "operating features which are vital to today's telephone traffic and service conditions." The court below concluded that the second advertisement "neither identifies any person directly or indirectly whom it charges with infringement * * *". Again we must disagree. While the identification is a broad one, the class of persons to whom the advertisement is directed concededly is constituted of operating telephone companies who, it may be assumed, must make use of telephone "operating features which are vital to today's traffic and service conditions." The number of these persons or corporations is

---

[5] See 71 F.Supp. at page 882.  [6] Emphasis added.

probably not so great as would first appear but in any event the class who might be sued by Automatic Electric is defined.

Bearing in mind that Automatic Electric has the right to give notice to the trade that it will terminate its gratuitous wartime licenses,[7] as was done in the first advertisement, the second advertisement seems to us to go far beyond any such legitimate purpose. On its face the advertisement may be construed to constitute a definite threat to all independent operating telephone companies in the United States that they will be sued for infringement if they make use of apparatus manufactured by others than Automatic Electric or its licensees. Automatic Electric's intention in this connection is made doubly clear by the statement that it must "take every possible step" to protect its patent position.[8] We are of the opinion that the Declaratory Judgments Act was intended by Congress to meet just such circumstances as are presented by the case at bar, and that Federal, Automatic Electric and the public are entitled to the benefits of an adjudication under the Act to the end that the patent situation relating to modern telephone equipment may be clarified promptly for the public benefit. A multiplicity of separate infringement suits thus may be avoided.

We note that the second prayer of the complaint requests that " * * * each of the aforesaid patents, and every other patent presently owned or controlled by * * * [Automatic Electric] and affecting the apparatus * * * manufactured, sold or offered for sale by * * * [Federal be declared to be] invalid as to each and every claim thereof." We construe the phrase "the aforesaid patents" as referring to the 7 patents owned by Automatic Electric and set out in note 1. The phrase "every other patent presently owned or controlled" by Automatic Electric, we construe as referring to the "1,600 [United States] Patents", except the 7, as well as to the "Thousands of Other Patents" referred to in the second advertisement. But it is only by virtue of the allegation of the complaint that the 7 Automatic Electric patents

set out in note 1 each contain "one or more claims finding literal response" in Federal's apparatus as designated in Exhibits 1 to 4 inclusive of the complaint that the area of conflict between Federal and Automatic Electric is established and defined. No area of conflict is defined or established as to the 1,600 patents owned by Automatic Electric, except the 7, or as to the thousands of other patents controlled by Automatic Electric. A justiciable controversy is shown to exist between Federal's apparatus and certain of the claims of Automatic Electric's 7 patents, but no justiciable controversy is established by the pleadings as to other patents owned or controlled by Automatic Electric whether they are vital to today's telephone traffic and service conditions or not.

Accordingly, the judgment of the court below will be reversed and the cause will be remanded with the direction to reinstate the complaint and to proceed in accordance with this opinion.

---

[7] See the first advertisement, footnote 3 supra.

[8] See the fifth paragraph of the second advertisement.