## ALAMO REFINING CO. v. SHELL DEVELOPMENT CO. et al.

### Civ. A. No. 1065.

United States District Court
D. Delaware.
May 26, 1949.

Arthur G. Connolly, of Wilmington, Del., and Thorley Von Holst, Sidney Neuman and Robert W. Poore, all of Chicago, Ill., for plaintiff.

William Prickett, of Wilmington, Del., and Albert R. Connelly, of Cravath, Swaine & Moore, New York City, for defendants Shell Development Company and International Catalytic Oil Processes Corporation.

James R. Morford and Thomas Cooch, of Marvel & Morford, of Wilmington, Del., and Garrett R. Tucker, Jr., and Brady Cole, of Baker, Botts, Andrews & Parish, of Houston, Texas, for defendant Texaco Development Corporation.

Robert H. Richards, Jr., of Richards, Layton & Finger, of Wilmington, Del., and Theodore Kenyon, of Kenyon & Kenyon, New York City, for defendant Standard Oil Development Company.

John J. Morris, Jr., of Hering, Morris, James & Hitchens, of Wilmington, Del., and Harold S. Glendening and F. P. Warne, of Cahill, Gordon, Zachry & Reindel, New York City, for defendant The M. W. Kellogg Company.

William S. Potter, of Southerland, Berl & Potter, of Wilmington, Del., and A. M. Byrd and M. P. Venema, of Chicago, Ill., for defendant Universal Oil Products Company.

LEAHY, Chief Judge.

Plaintiff filed a declaratory judgment complaint against Shell Development Company (hereinafter called "Shell"), Standard Oil Development Company (hereinafter called "Standard Development"), Texaco Development Corporation (hereinafter called "Texaco"), The M. W. Kellogg Company (hereinafter called "Kellogg"), International Catalytic Oil Processes Corporation (hereinafter called "International"), and Universal Oil Products Company (hereinafter called "Universal") and the M. W. Kellogg Company, as agents of Standard Oil Company of Indiana (hereinafter called "Standard of Indiana"). The complaint [1] charged that Kellogg and Universal, as agents for all the defendants, offered plaintiff a license under all of the patents of the defendants relating to the fluid catalytic cracking process for the treatment of petroleum in order to permit plaintiff to use this process at its plant located at Sweeny, Texas.

During World War II there was need for aviation fuel. A method available for commercial use in 1942 was a process of fluid catalytic cracking. Kellogg, Universal, Shell, Standard Development, Texaco and Standard of Indiana had participated in the development of the process and owned various patents in the field. To make this process available to all refiners, the Office of Petroleum Coordinator for War issued its Recommendation No. 41, dated July 24, 1942, suggesting an agreement to be made between the companies for cross-licensing and for the licensing of others under the group patents. An agreement was entered into on August 7, 1942, approved by the Chief Counsel of the Petroleum Administration for War on October 12, 1942. The Chairman of the War Production Board certified to the Attorney General his approval of the agreement. With an amendment dated January 6, 1944, all the parties approved the agreement known as "Recommendation 41 Agreement".

This agreement provides for cross-licensing of patents of all the parties. Each of the parties grants to Kellogg and Universal a non-exclusive right to grant licenses including the fluid catalytic cracking process.

During World War II an oil refinery was erected at Sweeny, Texas. The plant was designed by Universal and operated by two other companies not parties to this suit. The latter with the Government's consent procured a license under the patents covered by the Recommendation 41 Agreement. Universal acted as agent for these negotiations. There was also a process agreement entered into on May 16, 1944 between Universal and the other two companies. At the war's end Sweeny was declared surplus. Plaintiff purchased Sweeny from the War Assets Administration on June 20, 1947, but plaintiff first requested that the Recommendation 41 Agreement be cancelled.

Universal shows that according to the process agreement involving the two wartime operators, any subsequent purchaser of the plant would have an option of demanding a similar license. With this in mind, Universal communicated with plaintiff and offered a license, as was Universal's

---

[1] References to the complaint, unless otherwise stated, are to the amended and supplemental complaint filed about six months after the original complaint.

obligation, and also offered to re-license the fluid catalytic cracking facilities which plaintiff [2] had purchased.

Kellogg never dealt with plaintiff, but what business dealings it had—relating to other matters—was with Phillips direct. Kellogg is in the business of engineering and constructing plants. It is, in fact, a competitor of Universal. It sought much data from Kellogg on the catalytic cracking process and as early as January, 1947, Phillips was negotiating for a standard royalty rate. Commencing in July, 1946, up until three days before suit, here, on September 12, 1947, Phillips showed itself in a hurry to construct its proposed plants at Bosger, Texas and Kansas City, Kansas. There was discussion that if a license should issue for these two plants it could be extended to plaintiff as Phillips' subsidiary.

Phillips last met in New York on September 8, 1947.[3] Again there was no hint of a threat of suit by Kellogg or by any other party. At best, a list of patents available under the proposed license was given to Phillips.

The complaint specifically prayed for judgment that plaintiff's Sweeny operation did not infringe ten enumerated patents belonging to Kellogg, Standard Development, Standard of Indiana and Shell; otherwise that these patents were invalid. The complaint also contains a general prayer that all other patents of defendants asserted to cover the Sweeny operation be declared invalid.

The motions filed by defendants vary in nature, i. e., some are to dismiss the complaint for lack of jurisdiction and failure to state a claim upon which relief could be granted; others of the defendants have labeled their motions one for summary judgment; there is also a motion by Kellogg and Universal, sued as agents of Standard of Indiana, to dismiss on the ground that an indispensable party is not before the court. Since the motions of the defendants vary, it will be necessary to treat them in apposite groups.

### I. Motions to Dismiss of Texaco Development Corporation and International Catalytic Oil Processes Corporation.

■ The motions of Texaco and International attack the complaint [4] itself, and no outside pleadings are offered in support of the motions. These defendants request that in passing on their motions the court exclude the affidavits and depositions filed by the other defendants in support of their motions.

The liberal view which has been taken to support jurisdiction under the Declaratory Judgment Act, 28 U.S.C.A. § 400 [now §§ 2201, 2202], has found "actual controversy" in a number of post-war situations which have not been previously before the courts. Frederick Hart & Co., Inc. v. Recordgraph Corp., 3 Cir., 169 F.2d 580; Federal Telephone & Radio Corp. v. Associated Telephone & Telegraph Co., 3 Cir., 169 F.2d 1012. Heretofore, courts have held that actual controversy does not exist in a situation until after the patentee has made some assertion that his patent covers the activities of the plaintiff. In short, it was thought a charge must be present by defendant against plaintiff or one of his customers that they have infringed, but this charge could be made directly or indirectly.[5] Treemond Co. v. Schering Corp., 3 Cir., 122 F.2d 702. Nor can the patentee use his patents as an economic weapon counting on the in terrorem effect on an

---

[2] It would appear plaintiff is owned and controlled through 80% stock ownership by Phillips Petroleum Company.

[3] The papers show that the institution of the case at bar was recommended by Phillips' Executive Committee prior to this meeting.

[4] The amended complaint added certain allegations concerning operations at the Sweeny plant since the filing of the original complaint and added two more patents to the litigation, one belonging to Kellogg and one to Shell.

[5] That such is a condition precedent to a consideration of validity and infringement, is the conclusion of Borchard: "Justiciability, however, is hardly possible before the alleged infringer or his customers or dealers have been notified of the patentee's claim, however informal the method of notification or charge." Declaratory Judgment (2 Ed. 1941) p. 807.

industry. Dewey & Almy Chemical Co. **v.** American Anode, 3 Cir., 137 F.2d 68, certiorari denied, 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454.

But the complaint, here, contains no allegation that Texaco and International own any patents which they have asserted, even remotely, directly or indirectly, plaintiff infringes by its use of the fluid catalytic cracking process at its Sweeny plant. Nor is there any allegation that these defendants have ever charged any other person or threatened any other person with suit upon any catalytic cracking patent owned by these defendants. The charge of actual controversy is bottomed on assertions said to be made by representatives of Kellogg and Universal.

There is, however, no allegation and a complete failure to allege that either Kellogg or Universal charged plaintiff with infringement upon any particular patent or patents owned by Texaco or International. This is not the usual situation where there is a controversy over patents between plaintiff and defendant and the only deficiency is an insufficient identification of the patents. Cf. Pomerantz v. Jean Vivaudou Co., D.C., 65 F.Supp. 948. Here there is neither an identification of the patents nor a charge of infringement nor threat of suit upon any patent belonging to these defendants. I think this failure of plaintiff renders the complaint defective against Texaco and International. Obviously, "No area of conflict is defined or established" as to any single patent or all of the patents of Texaco and International. Federal Telephone and Radio Corp. v. Associated Telephone & Telegraph Co., supra; Chicago Pneumatic Tool Co. v. Hughes Tool Co., D.C.Del., 61 F.Supp. 767, affirmed 3 Cir., 156 F.2d 981, per curiam, certiorari denied 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670.

The conclusion as to these defendants is that the complaint should be dismissed.

## II. The Motions to Dismiss and for Summary Judgment of Defendants Kellogg and Universal as Agents

■ The motions to dismiss and for summary judgment of defendants Kellogg and Universal as agents [6] must be denied. It is alleged in paragraph 11 of the complaint that Kellogg urged plaintiff to accept a license under all of the patents of the pool to permit the continued use of the fluid catalytic cracking process of said Sweeny Plant and thereby to avoid liability for infringement." The complaint contains a similar allegation against Universal. I think the present record not only fails to support these allegations but defendants' affidavits and the plaintiff's equivocal affidavits show affirmatively that these allegations are not true in fact. Nevertheless, these allegations, if accepted as true, disclose a threat or charge of infringement and consequently the complaint alleges a justiciable controversy. This presupposes, of course, that the agency issue, as discussed later, is met and determined, for if there is lack of authority that ends the matter.

■ I am accordingly compelled by Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580, 581, to refuse the motions to dismiss and for summary judgment. In that case the court emphasized that affidavits can not be used as a basis for deciding the fact issue of controversy and charges of infringement. The court said: "It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue." I think, under the doctrine of that case, defendants' affidavits alone are to be considered vis-a-vis the complaint. The ratio of the decision precludes the possibility of a different rule where, as here, plaintiff's answering affi-

---

[6] The defendants are sued as agents of all other defendants and as agents of Standard Oil of Indiana, a non-party to the action. These defendants claim there are defects in each agency capacity. I have, however, treated only the question in which these defendants are agents for the other defendants. But what I have said on this limited point is applicable mutatis mutandis to the other agency point.

davits are equivocal. Cf. also, Federal Telephone & Radio Corp v. Associated Telephone & Telegraph Co. et al., 3 Cir., 169 F.2d 1012.

In denying defendants' motions I suggest that the issue of justiciable controversy may be tried as a separate issue. In this way the expense of an elaborate general patent trial will be eliminated in the event that the evidence is as deficient as the present record in disclosing a controversy.

III. Motions of Remaining Defendants.[7]

■ The pleadings must be amended to allege actual agency authority before any determination can be made as to whether actual controversy exists. Plaintiff's basis, apparently, for claiming an actual controversy between itself and these defendants, is certain statements which are alleged to have been made to plaintiff by an "officer of defendant Kellogg" and by "representatives of Universal". Plaintiff contends that these defendants are bound by these statements because each of the parties (i. e. Kellogg and Universal) was "acting as agents of all the defendant parties to the patent pool". The complaint alleges and it is admitted that both Kellogg and Universal had the authority to grant licenses for the fluid catalytic cracking process by virtue of the Recommendation No. 41 Agreement. It is, however, nowhere alleged that either of these license agents had power or authority to speak for these defendants in charging any person with infringement of the latter's patents or in threatening suit upon any such patents.

It is apparent, therefore, that unless Kellogg or Universal were given specific authority to make such threats on behalf of these defendants, there is no justiciable controversy and the complaint should be dismissed. The difficulty which I have is whether a general allegation of agency is sufficient to make the complaint good at the pleading stage or whether such special agency must be alleged. With that in view, I shall dismiss the complaint against these defendants unless plaintiff amends to allege special authority of defendants Kellogg and Universal from these defendants to make the threats and charges alleged to have been made in paragraphs 11 and 12 of the complaint.

Both Kellogg and Universal also raise the indispensable party issue. They argued that Standard of Indiana is not before this court and is beyond the jurisdiction. It is an acknowledged principle that a person's property rights cannot be litigated in his absence and an adjudication of Standard of Indiana's patents would be irregular. But until the agency issue is fully resolved, I prefer to withhold decision on the effect of the absence of Standard of Indiana in these proceedings.

The parties should submit an order in accordance with this opinion.

---

[7] Kellogg is sued not only as agent but also as individual defendant. While the same party cannot at a particular time act as both principal and agent, it is true here that Universal could act as agent for Kellogg in Kellogg's capacity as owner of certain patents in the pool. Viewed in this light, therefore, Kellogg is included in the "remaining defendants".