## ALAMO REFINING CO. v. SHELL DEVELOPMENT CO. et al.

Civ. No. 1065.

United States District Court
D. Delaware.

Aug. 10, 1951.

J. Bernhard Thiess, Thorley von Holst, Sidney Neuman and Robert W. Poore, Chicago, Ill., and Arthur G. Connolly, Wilmington, Del., for plaintiff.

Theodore S. Kenyon and Malvin R. Nandelbaum (Kenyon & Kenyon), New York City, and Robert H. Richards, Jr. (Richards, Layton & Finger), Wilmington, Del., for defendant Standard Oil Development Co.

James R. Morford and Thomas Cooch (Morford, Bennethum, Marvel & Cooch), Wilmington, Del., Brady Cole and Garrett R. Tucker, Jr. (Baker, Botts, Andrews & Parish), Houston, Tex., for defendant Texaco Development Corp.

Harold S. Glendening and Frederick P. Warne (Cahill, Gordon, Zachry & Reindell), New York City, and John J. Morris, Jr. (Hering, Morris, James & Hitchens), Wilmington, Del., for defendant M. W. Kellogg Co.

Albert R. Connelly and William F. Collins (Cravath, Swaine & Moore), New York City, and William Prickett, Wilmington, Del., for defendants Shell Development Co. and International Catalytic Oil Processes Corp.

A. M. Byrd and M. F. Venema, Chicago, Ill. and William S. Potter (Berl, Potter & Anderson), Wilmington, Del., for defendant Universal Oil Products Co.

LEAHY, Chief Judge.

This action was commenced in September, 1947 by an original complaint for declaratory judgment respecting the validity and infringement of patents said to "number in the hundreds" relating to fluid catalytic cracking processes. In 1948 the complaint was amended. All defendants moved to dismiss the amended complaint. I granted the motion as to Texaco and International for failure to indentify any patents of those defendants with the charge of infringement. The motions of Shell and Standard were granted for failure to allege any authority of agents to charge infringement. The motions of Kellogg and Universal, as agents, were denied. Decision was reserved as to Kellogg and Universal as agents for Indiana. See D. C.Del., 84 F.Supp. 325. Before the entry of an order on my opinion plaintiff filed and then withdrew a Second and Supplemental Complaint and moved for rehearing of the matter already decided. I denied rehearing on March 20, 1950,[1] but plaintiff was given leave to file another amended complaint. Thereafter, a further amended and supplemental complaint—the 1950 complaint—was filed. The present motions are addressed to this complaint.

The critical facts of the matter at bar were stated in the earlier opinion. 84 F. Supp. 325. At the outset, plaintiff's reference to defendants as a "patent pool" should be redefined. The fact is defendants entered into an agreement at the direction and with the approval of the Government for 1. compulsory licensing of all defendants' patents relating to the general field of catalytic refining, 2. co-operative research among all defendants, and 3. making available the benefits of research to licensees—the whole package of rights being available to any one in the industry at rates approved by the Government as reasonable. The facts are now clear and without conflict.

Universal Oil Products Company was obligated to grant a license at plaintiff's request. It told plaintiff it was willing to do so. The M. W. Kellogg Company had authority under the Recommendation 41 Agreement to grant a similar license. Kellogg and Universal were competitors in supplying engineering service and plant design as well as equipment. Kellogg had been working for some time to interest Phillips Petroleum Company (whose subsidiary was Alamo Refining Company, plaintiff in the case at bar) to take its services in connection with the erection of new plants for Phillips at Kansas City, Kansas and Borger, Texas. Licensing and royalties were the subject matter for discussion. During the course of these negotiations, Phillips acquired the control interest in Alamo. Kellogg pointed out under the Recommendation 41 Agreement Phillips would be entitled to extend its license to Alamo, its subsidiary.

This is the "offer of license" relied on in the complaint as amended.

The fact is no representative of Kellogg ever met with any officer of plaintiff; nor did the representative who conducted the negotiations have any personal knowledge of the structure or operation of the Sweeny Plant.

The theory of the 1950 complaint is that when Kellogg and Universal, acting as agents to grant licenses under defendants' patents, offered such a license to plaintiff respecting operations at plaintiff's Sweeny Plant, the offer constituted a charge that such operations infringed defendants' patents. This, it is plaintiff's thesis, created

---

1. The motion for rehearing is reported in 85 USPQ 36.

a justiciable controversy.[2] It is, I think, the basic issue upon which the complaint is to stand or fall.

The fundamental question is found in paragraph 11 of the complaint. It is set forth in parallel columns with the corresponding paragraph of the 1948 complaint so that it may appear graphically how the latest amendment affects the basic issue.

Comparison of Allegations of Paragraphs 11 of 1948 and 1950 Complaints

| Paragraph 11 of the 1948 Complaint | Paragraph 11 of the 1950 Complaint |
|---|---|
| Since plaintiff's acquisition of Sweeny Plant, an officer of defendant, Kellogg, one of the two defendants empowered to grant a license under all of the patents of the pool, | (1) Subsequent to plaintiff's acquisition of the Sweeny Plant, Kellogg, one of the two defendants empowered to grant a license under all of the patents of the pool, |
| and acting as agent for all of the defendant parties to the pool as well as for Standard of Indiana, | (2) and acting for itself and as agent for all of the other parties to the pool, including Standard of Indiana, and *in accordance with and pursuant to the express and implied authority vested in it by the other parties to the pool,* |
| advised plaintiff that the continued operation of the said fluid catalytic cracking process of said Sweeny Plant would *infringe,* and impose upon plaintiff liability for *infringement* of, one or more of the patents of the pool, and offered to plaintiff and urged plaintiff to accept a license under all of the patents of the pool to permit the continued use of the fluid catalytic cracking process of said Sweeney Plant and thereby to avoid liability for *infringement.* | offered to plaintiff, and urged plaintiff to accept, a license in the form prescribed by the agreement among (3) the parties to the patent pool, under all of the patents of the pool, to permit the continued use of the fluid catalytic cracking process of said Sweeny Plant, and urged plaintiff to agree to pay a specified royalty for all operations coming within a definition of the fluid catalytic cracking process contained in said license. |
| | The offer of a license to plaintiff as (4) aforesaid was intended by Kellogg, |
| | acting for itself and as agent for (5) the other parties to the patent pool, |
| | to be understood by plaintiff, and was understood by plaintiff, as a representation that the payment of a royalty was necessary for the (6) continued operation of the said process at said Sweeny Plant without violating rights of the parties to the patent pool. |

2. Plaintiff admits no express charge or threat was ever made.

As each defendant has its own reasons in support of the severable motions, they must be treated separately.

### I. Motion: Standard Oil Development Company.

I shall set forth this motion because it is typical of the others. Standard moves:

"1. In accordance with the provisions of Rule 12(b) of the Federal Rules of Civil Procedure [28 U.S.C.], for an order dismissing as to this defendant the Amended and Supplemental Complaint filed April 25, 1950 on the grounds that (a) this Court lacks jurisdiction over the subject matter because the said Amended and Supplemental Complaint fails to allege a justiciable controversy between the plaintiff and this defendant under the Declaratory Judgment Act, Title 28 U.S.C. § 400 (§ 2201 of 1948 codification); and (b) the said Amended and Supplemental Complaint fails to state a claim against this defendant upon which relief can or should be granted.

"2. In the event that the motion contained in paragraph (1) hereof be denied, for a summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, dismissing as to this defendant the said Amended and Supplemental Complaint, based on the pleadings herein and the affidavits, depositions, exhibits and admissions which were before the Court on the motions to dismiss and for summary judgment heretofore disposed of by decision of this Court filed May 25 [26], 1949, on the ground that this Court lacks jurisdiction over the subject matter of this action because there was not, at the time this action was commenced or at the time the Amended and Supplemental Complaint was filed, an actual controversy existing between the plaintiff and this defendant.

"3. In the event that the motions contained in paragraphs (1) and (2) hereof be denied, for an order (a) pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, granting a separate trial on the issue of justiciable controversy, based on the pleadings herein, the affidavits, depositions, exhibits and admissions referred to in paragraph (2) hereof, and on such other evidence as the parties hereto may ad-duce; and (b) extending the defendant's time to answer or otherwise plead or move pending the outcome of such separate trial.

"4. For an order extending for a period of thirty (30) days after notice of entry of an order on this motion the time within which this defendant may answer the said Amended and Supplemental Complaint or otherwise move or plead in the event the motions contained in paragraphs (1), (2) and (3) hereof be denied."

The motion has two grounds: (a) lack of jurisdiction over the subject matter because the complaint on its face demonstrates there is no actual controversy between plaintiff and Standard; and (b) failure of the complaint to state a claim upon which relief should be granted. In support of (a) Standard shows the 1950 complaint fails to allege defendant's licensing agent either 1. charged plaintiff with infringement of Standard's patents or threatened suit upon such patents, or 2. had any authority to speak for Standard in making such threats. In support of (b) Standard says the record in the case at bar shows plaintiff had terminated its operations and wound up its affairs before the 1950 complaint was even filed.

Standard seeks, in addition to its motion to dismiss, summary judgment on the same grounds, but based on the whole record, including the pleadings, affidavits, depositions, exhibits and admissions now before the court. If both motions are denied, Standard seeks a separate trial on the issue of justiciable controversy.

1. The present complaint fails to allege Standard's licensing agents either (1) charged plaintiff with infringement or threatened suit upon Standard's patents, or (2) such agents had any authority to speak for Standard. The complaint, on the contrary, bases the alleged controversy solely upon the offer of a license to plaintiff under the patents of all defendants by Kellogg and Universal acting simply as licensing agents and upon representations alleged to have been made to plaintiff by Kellogg in connection with the offer. I dismissed the amended complaint in 1949 as to Standard because the allegations of agency were insufficient. I wrote, 84 F.Supp. at page 329:

"The pleadings must be amended to allege actual agency authority before any determination can be made as to whether actual controversy exists [with respect to the defendants other than Kellogg and Universal] * * *. The complaint alleges and it is admitted that both Kellogg and Universal had the authority to grant licenses for the fluid catalytic cracking process by virtue of the Recommendation No. 41 Agreement. It is, however, nowhere alleged that either of these license agents had power or authority to speak for these defendants in charging any person with infringement of the latter's patents or in threatening suit upon any such patents. * * * With that in view, I shall dismiss the complaint against these defendants unless plaintiff amends to allege special authority of defendants Kellogg and Universal from these defendants to make the threats and charges alleged to have been made in paragraphs 11 and 12 of the complaint."

The 1950 complaint fails to meet the requirements I laid down. Moreover, it, in fact, omits the allegations of threat by the agents referred to in the 1948 complaint.[3] More than that, the 1948 complaint (Par. 11-12) alleged the plaintiff was advised "that the continued operation of the said fluid catalytic cracking process of said Sweeny Plant would *infringe* and impose upon plaintiff liability for *infringement* of, one or more of the patents of the pool, and offered to plaintiff * * * a license under all of the patents of the pool * * * and thereby to avoid liability for *infringement*. (Emphasis supplied). The corresponding paragraph of the 1950 complaint when amended *excludes all reference to infringement*. The allegations in the latest complaint boil down to nothing more than that the licensing agents offered a license to plaintiff and urged it to pay a specified royalty.

No case has been cited and I have found none where it has been held the offer of a license by a patentee or his agent gives rise to a justiciable controversy, absent a charge of infringement or a threat of suit.

Here, seven years have elapsed since the Recommendation 41 Agreement became effective whereby defendants pooled their patents at the Government's suggestion, and there is no record of any suit brought by defendants against any one for infringement of any of the pooled patents in this field. The only allegation which even squints at controversy is a sentence which avers one of the agents represented that two of the patents of Standard were among "the more basic patents in fluid catalytic cracking." The record plainly shows this to have been selling talk by the licensing agents. There is no statement as to infringement—no threat.

2. I think a strong public policy should exist to permit the unrestricted offering of a patent license. The owner of a patent is fettered if the mere offer of a license, without an accompanying charge of infringement or threat of suit, would expose the patentee to a declaratory judgment action. The offer of a license does not have the character of a charge or threat. The licenses offered here by Kellogg included the benefit of "know-how" resulting from the cooperative research of all defendants, as well as all future improvements and operating technique acquired by any of the defendants; and the proposed licensing agreement provided the licensors would defend and hold harmless from charges of infringement by others, any licensee.

Here, I have given all opportunity to plaintiff—at least four attempts to frame a pleading—to sharpen its pencil to draft an amended complaint to state the cause. But, leaving the question of whether plaintiff should now be strictly bound by its own pleading, the record demonstrates Standard should also have its motion for summary judgment. No controversy was implied in the offer of the license; and since there is nothing at all in the whole record to indicate a threat of suit or charge of infringement, both motions should be granted.

---

3. Compare the two columns above.

## II. Motion: Texaco Development Corporation.

I sustained the original motion to dismiss as against this defendant and wrote, 84 F. Supp. at page 328:

"But the complaint here, contains no allegation that Texaco and International own any patents which they have asserted, even remotely, directly or indirectly, plaintiff infringes by its use of the fluid catalytic cracking process at its Sweeny Plant. Nor is there any allegation that these defendants have ever charged any other person or threatened any other person with suit upon any catalytic cracking patent owned by these defendants. The charge of actual controversy is bottomed on assertions said to be made by representatives of Kellogg and Universal.

"There is, however, no allegation and a complete failure to allege that either Kellogg or Universal charged plaintiff with infringement upon any particular patent or patents owned by Texaco or International. This is not the usual situation where there is a controversy over patents between plaintiff and defendant and the only deficiency is an insufficient identification of the patents. Cf. Pomerantz v. Jean Vivaudou Co., D.C., 65 F.Supp. 948. Here there is neither an identification of the patents nor a charge of infringement nor threat of suit upon any patent belonging to these defendants. I think this failure of plaintiff renders the complaint defective against Texaco and International. Obviously, 'No area of conflict is defined or established' as to any single patent or all of the patents of Texaco and International. Federal Telephone and Radio Corp. v. Associated Telephone & Telegraph Co., supra [3 Cir., 169 F.2d 1012]; Chicago Pneumatic Tool Co. v. Hughes Tool Co., D.C.Del., 61 F.Supp. 767, affirmed 3 Cir., 156 F.2d 981, per curiam, certiorari denied, 329 U.S. 781, 67 S.Ct. 204, 91 L.Ed. 670.

"The conclusion as to these defendants is that the complaint should be dismissed."

■ What I then said as to this defendant is equally true under the latest 1950 amended complaint. Under the most recent complaint there is no charge any person connected with this defendant ever had any contact or a word of discussion with plaintiff about any particular patents owned by it, much less charged plaintiff with infringement or that any patent belonging to this defendant has even a "colorable relevancy" to plaintiff's operations—much less "an identification" by name and number with a consequent defined "area of conflict."

3. As to this defendant Federal Telephone & Radio Corp. v. Associated Telephone & Telegraph Co., 3 Cir., 169 F.2d 1012, controls, where Chief Judge Biggs held that where no area of conflict between plaintiff and defendant has been defined, no suit for declaratory judgment can consequently be entertained. Plaintiff alleged the patents owned by defendants in the field of fluid catalytic cracking "number in the hundreds," but later alleged that "only a few of them" have even colorable relevancy to the cracking process employed by plaintiff at the Sweeny Plant. In Paragraph 12 plaintiff lists 12 patents that are asserted to have "colorable relevancy" to its operation. This defendant does not own any of the 12 patents which fall within the defined area of conflict.

4. In addition, the 1950 complaint contains no allegation as to Texaco respecting Kellogg and Universal's right to 1. file suit for any of Texaco's patent rights; 2 to threaten suit on any of Texaco's patent rights; 3. to charge infringement either directly or by innuendo; 4. to construe the legal scope of any such patents; or 5. to involve this defendant in a controversy with anybody.

The particular motion to dismiss should be granted.

## III. Motion: M. W. Kellogg Company (Sued Individually).

This defendant moves to dismiss or for summary judgment on the ground, among others, that the offer of the license was not, on the present record and in law, a declaration of aggression. Kellogg argues that in any peaceful offer of a license, the offeror must always be free to describe the patents, their claims and what operations they cover for, unless he

describes what he has to sell, no licenses can be offered without flooding the federal courts with declaratory judgment actions. This defendant also shows plaintiff makes no serious attempt to establish there is any element of *in terrorem* activity.

As I decided with respect to the Standard motion, supra, a mere offer of a license by a non-exclusive licensing agent (such as Kellogg and Universal) does not create an actual controversy under the Federal Declaratory Judgments Act, 28 U.S.C. § 2201. The motion, here, is directed to a failure to allege facts constituting an actual controversy. The voluminous record on file shows the deficiency is not only one of pleading—but, in fact, no controversy exists. In 1948, the complaint included a charge of infringement and because such an allegation was included I decided a controversy had been alleged and I was, therefore, compelled under Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 169 F.2d 580, to deny the motion as to defendants Kellogg and Universal, as agents, provided other deficiencies in the complaint were, as I stated, supra, remedied, even though the record before me then showed there had been no charge of infringement. In fact, I wrote, 84 F.Supp. at page 328: "It is alleged in paragraph 11 of the complaint that Kellogg 'urged plaintiff to accept a license under all of the patents of the pool to permit the continued use of the fluid catalytic cracking process of said Sweeny Plant and thereby to avoid liability for infringement.' The complaint contains a similar allegation against Universal. I think the present record not only fails to support these allegations but defendants' affidavits and the plaintiff's equivocal affidavits show affirmatively that these allegations are not true in fact. Nevertheless, these allegations, if accepted as true, disclose a threat or charge of in-fringement and consequently the complaint alleges a justiciable controversy."

■ This was what saved the 1948 complaint. *This allegation has been omitted from the 1950 complaint,* and the similar allegation against Universal has also been omitted. The reason is obvious, as I pointed out before, because the extensive record showed the first allegations to have no basis in fact. As to this defendant, therefore, plaintiff faces the difficult task of showing a controversy while admitting by its pleading there never was a charge of infringement or a threat to sue. The only new material appearing, since my former opinion, in the amended 1950 complaint is that, when plaintiff was offered the license, it was intended and understood by plaintiff as a representation the payment of royalty was necessary for the continued operation of the processes at the Sweeny Plant. This test is too subjective as a guide in applying the declaratory judgments statute, at least where its application is not mandatory.[4] A controversy must find its origin in some charge of infringement or threat of suit and thus must operate by behaviour and not exist simply in the mind of a potential licensee: Manifestly, some articulation of controversy either by word or deed is necessary.

That plaintiff rests its case on the thesis that a mere offer of a license is sufficient to create an actual controversy was judicially admitted in the petition for rehearing filed after my former opinion. Plaintiff there stated:

"Plaintiff does not contend that Kellogg or Universal or any other defendant made any formal or specific charge of patent infringement or threat of suit." (p. 3)

\* \* \* \* \* \*

"\* \* \* plaintiff proposes to file a Second Amended and Supplemental Complaint,

4. Brillhart, Adm'r v. Excess Insurance Company of America, 316 U.S. 491, 62 S.Ct. 1173, 1175, 86 L.Ed. 1620: "Although the District Court had jurisdiction of the suit under the Federal Declaratory Judgments Act, 28 U.S.C.A. § 400, it was under no compulsion to exercise that jurisdiction. The petitioner's motion to dismiss the bill was addressed to the discretion of the court" (per Justice Frankfurter) and "The exercise of jurisdiction under the Federal Declaratory Judgments Act is certainly not compulsory; it is discretionary" (per Justice Douglas).

in which the allegations will be made to conform to the proofs adduced, omitting any language which might be interpreted as alleging a specific charge of infringement or express threat of suit." (p. 7)

\* \* \* \* \* \*

"\* \* \* plaintiff relies for a justiciable controversy only upon the offer of a license in the circumstances shown here \* \* \*" (p. 7)

\* \* \* \* \* \*

"this Court should decide the important and fundamental question in the case, i. e., whether under all the circumstances here presented, the proffer of a license by the defendants to the plaintiff constituted the assertion of adverse rights sufficient to give jurisdiction under the Declaratory Judgments Act." (p. 16)

The above proposition that an offer of a license is a sufficient assertion of rights to create a controversy goes, as I said with respect to Standard's motion, beyond any reported case. There are cases, plaintiff cites them, where there was either (1) a demand for royalties, or (2) a demand that a license be taken under an *in terrorem* approach. Here, there was no such demand.

This motion should likewise be granted.

### IV. Motion: International Catalytic Oil Processes Corporation and Shell Development Company.

Both Shell and International move to dismiss and for summary judgment on the complaint, depositions, admissions and other papers on the ground the undisputed facts demonstrate there is no justiciable controversy. Here, as with the other defendants above, I previously concluded "that the complaint should be dismissed" as against International because "there is neither an identification of the patents nor a charge of infringement nor a threat of suit upon any patent" belonging to International. 84 F.Supp. 325, 328; and, as to Shell there should likewise be dismissal "unless plaintiff amends to allege special authority of defendants Kellogg and Universal" as agents of Shell "to make the threats and charges alleged", and I suggested that, in the event of another try at

amendment, then "the issue of justiciable controversy may be tried as a separate issue" in order to obviate "the expense of an elaborate general patent trial". 84 F. Supp. at page 329.

5. There is no claim by plaintiff that International ever charged it with infringing any patent of International. No patent of International appears to have been brought to plaintiff's attention. None appeared on the various lists of patents available under the offered license. In fact, no International patent is identified anywhere in the whole record before me. The only possible reference to an International patent would be in plaintiff's request for a declaratory judgment as to "any and all patents" of defendants which they "may assert to cover or to be infringed by the fluid catalytic cracking process heretofore used by plaintiff at the Sweeny Plant." International, therefore, has never asserted infringement or threatened suit. The vague and omnibus reference by plaintiff does not, as I said as to the motions above, define or establish any "area of conflict" as to any patent of International under Chief Judge Biggs' teaching in Federal Telephone & Radio Corp. v. Associated Telephone & Telegraph Co., 3 Cir., 169 F.2d 1012, 1016, certiorari denied 335 U.S. 859, 69 S.Ct. 133, 93 L.Ed. 406.

In passing, I note this is the fourth time plaintiff has attempted to state a claim for declaratory relief. In exercising the discretion inherent under the statute, the obvious equities compel a conclusion the defendants should no longer be subjected to the expenses of time and effort in their continued involvement in this heavy litigation. International's motion will be granted.

6. Shell is also entitled to summary judgment. In the beginning, as to this defendant plaintiff alleged that Kellogg had "advised plaintiff the continued operation of the fluid catalytic cracking process of the Sweeny Plant would infringe, and impose upon plaintiff liability for infringement of, one or more of the patents of the pool" and that Kellogg followed this up by offering a license. I think this case as to all the above defendants can be sub-

mitted on the single legal issue of the offer of license. This can be decisive of the case because there is no conflict in the facts. The record demonstrates five master facts:

1. No one has ever been sued for infringement of any of the patents available for licensing under the Recommendation 41 Agreement—no one has ever been threatened with such an infringement:

2. Defendants have not warned any one that the operation of any process of fluid catalytic cracking did or would infringe their patents;

3. There have been no threats or charges of infringement by any defendants to plaintiff, to plaintiff's customers, or to the trade in general;

4. Defendants have not engaged in any *in terrorem* activity; and

5. There has not been any claim that any patent read on plaintiff's former activities at the Sweeny Plant; and there has not been any assertion by any defendant that any patent has been or would be infringed by such activity.

In short, the original allegation was based on the factual background that plaintiff had been confronted with what I once called a license "or else" or, as some courts have referred to the factual situation, as the offer of a license *in terrorem.*[5] I concluded that the record then before me, on the defendant's motion, failed to support the allegations. Now, the 1950 amended complaint does not follow the former charge. The present complaint alleges as the fact that Kellogg and Universal, as licensing agents, simply offered plaintiff a license. As far as the record before me shows all Kellogg was doing was to sell its goods and services, including know-how, engineering advice and its patent rights for a price to Phillips Petroleum Company and through it to its subsidiary the plaintiff. The other allegations to use plaintiff's own admission are "merely allegations which plead the legal effect of a license had it been accept-

ed by plaintiff." This is legal argument going to a pure question of law. Absent the basic factual dispute, I will, here, as in the other motions rule on the legal question and thus grant summary judgment in this defendant's favor.

V. Motion: Universal Oil Products Company and the M. W. Kellogg Company (Sued as Agents of Standard Oil Company of Indiana).

In my earlier opinion in respect to the contention of Universal and Kellogg that Standard (Indiana) is an indispensable party to the proceedings at bar for purposes of any adjudication of its patents, I wrote, 84 F.Supp. at page 329: "Both Kellogg and Universal also raise the indispensable party issue. They argued that Standard of Indiana is not before this court and is beyond the jurisdiction. It is an acknowledged principle that a person's property rights cannot be litigated in his absence and an adjudication of Standard of Indiana's patents would be irregular. But until the agency issue is fully resolved, I prefer to withhold decision on the effect of the absence of Standard of Indiana in these proceedings."

To correct a mis-statement made in the opinion, Universal and Kellogg are not sued, here, as agents of all defendants; they are, in fact, sued in their agency capacity only as agents of Indiana. And, in the opinion I wrote, 84 F.Supp. at page 329: "The complaint alleges and it is admitted that both Kellogg and Universal had the authority to grant licenses for the fluid catalytic cracking process by virtue of the Recommendation No. 41 Agreement. It is, however, nowhere alleged that either of these license agents had power or authority to speak for these defendants in charging any person with infringement of the latter's patents or in threatening suit upon any such patents."

Having made this finding I nevertheless granted plaintiff leave to amend

5. Chicago Pneumatic Tool Co. v. Hughes Tool Co., D.C.Del., 61 F.Supp. 767, 772, affirmed 3 Cir., 156 F.2d 981, certiorari denied 329 U.S. 781, 67 S.Ct. 204, 91 L. Ed. 670.

to allege "special authority" and wrote, 84 F.Supp. at page 329: "It is apparent, therefore, that unless Kellogg or Universal were given specific authority to make such threats on behalf of these defendants, there is no justiciable controversy and the complaint should be dismissed. The difficulty which I have is whether a general allegation of agency is sufficient to make the complaint good at the pleading stage or whether such special agency must be alleged. With that in view, I shall dismiss the complaint against these defendants unless plaintiff amends to allege special authority of defendants Kellogg and Universal from these defendants to make the threats and charges alleged to have been made in paragraphs 11 and 12 of the complaint."

The 1950 complaint failed to allege such special authority. In fact, it omits entirely the former allegations and seems to avoid all references to charges of infringement and threats; and *there are no allegations in it of special authority* from either Indiana or any of the other defendants. This, obviously, is fatal to the complaint as against Universal and Kellogg as agents of Indiana. A very special relationship between these two companies and Indiana is necessary to warrant me in adjudicating any patents of Indiana in its absence and when it is beyond the jurisdictional reach of this court. In fact, this court has already decided a question close to the one here presented. See Houdry Process Corp. v. Universal Oil Products Co., D.C.Del., 87 F.Supp. 547, where the status of the agents under the Agreement between defendants, here, was fixed by Judge Rodney. The converse of his decision, fixing such status, is that Indiana in the case at bar is an indispensable party. Cf. Ackerman v. Hook, 3 Cir., 183 F.2d 11; Fluorescent Fabrics, Inc. v. Gantner & Mattern Co.[6]

Plaintiff relies heavily on A. L. Smith Iron Co. v. Dickson, 2 Cir., 141 F.2d 3, for the proposition that a plaintiff may maintain against an agent a declaratory judgment action to obtain an adjudication of the validity and infringement of patents whose owner is not before the court. The Dickson case is not in point. That case is *res integra* and does not support plaintiff's position here. There are, at least, five points of distinction. The case of Contracting Division, A. C. Horn Corporation v. New York Life Ins. Co., 2d Cir., 113 F.2d 864, has been recognized, both before and after the Dickson case, as establishing the orthodox rule, applicable to cases not involving the peculiar fact background of the Dickson case, that a non-exclusive licensee can neither maintain an infringement suit nor provoke an "actual controversy" under the declaratory judgments statute.

■ It is clear the action must be dismissed as to Universal and Kellogg, sued as agents of Indiana, for lack of the indispensable owner—i. e., the owner of certain of the patents under attack, especially where the record demonstrates Indiana has not granted any part of the ownership of its patents and no authority or control over the enforcement of such patents.

The motions of these two defendants should be granted.

VI. An Additional Reason Common to All Defendants in Support of the Motions Against Plaintiff.

■ Paragraph 12(a) of the 1950 complaint alleges since December 31, 1949 plaintiff has conveyed all of its assets, both real and personal, including the Sweeny Plant, to another corporation, namely Phillips Oil Company. All of plaintiff's stock has been redeemed and cancelled, and plaintiff corporation has been completely liquidated. Defendants argue plaintiff thus no longer owns the Sweeny Plant and is no longer, therefore, conducting any operation which might infringe the patents of defendants.

In view of these circumstances, it would seem plaintiff corporation is in no need of a declaratory judgment as to its possible

6. No opinion for publication.

infringement. One of the major reasons for granting declaratory judgment in a patent case is to avoid the accrual of large damages for infringement until such time as the patent holder sees fit to put his bite on the alleged infringer by suit. Obviously, that reason is, not applicable in the case at bar under the changed circumstances. Whatever the formal plaintiff's liability may be, it is now fixed, and as it no longer operates the Sweeny Plant there is no reason for a decision on whether it should have a declaratary judgment. Where the court has power to take action in the exercise of a sound legal discretion, it should be based upon grounds of practical purpose. In the instant case, the declaratory judgments statute is called into operation on behalf of a phantom plaintiff. When this point was driven home by counsel for defendants, counsel for plaintiff then asked leave to file a motion brought by Phillips Oil Company for leave to be joined as a co-plaintiff in this action and asked the entry of an order not only granting the motion, but declaring at the same time that Phillips Oil Company would be liable for any judgment or judgments which might be rendered in this proceeding against Alamo Refining Company, the nominal plaintiff. I think this is a belated appearance on the part of a party who, at the time of the institution of this suit, had no status to ask this court to exercise its equitable jurisdiction under the Federal Declaratory Judgments Act. This is not a case in which a plaintiff is attempting to effect a dissolution and finds it cannot proceed in an orderly manner to accomplish distribution of its assets until there has been some determination of its contingent liabilities.

I think for the reason stated in support of the various motions, common to all defendants on this point, I should refuse to exercise my discretion, and refuse to take jurisdiction under these special circumstances. Orders on the several motions will be entered.